TOWNES v. THE CITY COUNCIL OF AUGUSTA.

1. ANSWER—JURISDICTION—FOREIGN CORPORATION.—A resident commenced an action against a foreign corporation, had a warrant of attachment issued, and real estate of such corporation attached. The corporation then appeared and answered, but afterward, learning that the warrant was not signed by the clerk personally, objected that the court did not have jurisdiction of the person of defendant, and asked to withdraw its answer. *Held*, that when a foreign corporation, non-resident person or firm, appears and

answers to the merits, by that act the court acquires jurisdiction of the person of the defendant for all purposes of the action.

2. CORPORATION—EMINENT DOMAIN.—A corporation authorized by its charter to engage in the manufacture of goods is not such a public or *quasi* public corporation as may condemn, or take and use for corporate purposes, the property of private individuals, under the authority of eminent domain, as provided in sec. 1473 of Rev. Stat.

3. ESTOPPEL.—T., as trustee for his wife, granted for value to A. the right to erect a dam on, and overflow, the lands of his wife. A. further covenanted to grant T. certain water power and free transportation for his boats on the waters of A. T. enjoyed the benefits of the contract during the life of the wife; after her death, during the minority of her sons, the remaindermen, and after the sons attained their majority they likewise used them. *Held*, that the remaindermen are, by their conduct, estopped from denying the right of A. to maintain the dam and overflow the lands.

4. IBID.—A party cannot receive the benefits of a contract, and at the same time refuse to bear the burdens incident thereto.

5. MR. JUSTICE POPE disagrees only as to the form of the judgment.

Before BENET, J., Edgefield, November, 1894. Reversed.

Action by W. G. Townes and H. H. Townes, jr., against the City Council of Augusta, for damages for erecting a dam on and overflowing plaintiffs' lands, commenced May 28, 1894. Tried at Edgefield, November, 1894, before Judge Benet and a jury.

The presiding judge charged the jury as follows:

Mr. Foreman and gentlemen of the jury: You have listened with great patience and close attention to the trial of this important case, a case which I hope has been as interesting to you as it has been to me. The case has been admirably argued by both sides with great learning, eloquence, and good temper. I think I see before me now an intelligent jury that will give this case careful and conscientious deliberation and consideration. I do not think that this is a jury (if there is ever one) to warn against prejudice as to corporations. I believe you will free your minds from any thought of prejudice against corporations; and, therefore, the fact that in this case the defendant is a corporation and the plaintiffs are individuals, will not influence you. I need

not say to you, whenever jurors do allow prejudice to influence them in their decision of a case, they are unworthy to be jurors, and commit perjury.

This case is a very inviting one, and if I had plenty of time I might be tempted to charge you at great length, where so many matters have been argued; but as it is late in the evening, and some of you may hope to get to your families to-night, I shall be as brief as the numerous requests to charge will allow me to be.

The plaintiffs, Willis G. Townes and Henry H. Townes, junior, sue the city council of Augusta for damages, alleging briefly that they are the owners of a certain tract of land on the Savannah River, on the Carolina side, in Edgefield County; that the defendant, the city council of Augusta, have built and maintain a dam on the said Savannah River, the building of which has resulted in so changing the level of the water of the river as to damage their lands, whether by overflows, or by greater overflows than former and ordinary freshets, or by saturation of the soil by increasing the level of the water, the plaintiffs claim $1,950 damages. I do not understand that they demand that the dam should be removed.

Mr. Croft: No, sir.

The Court (to the jury): They simply ask for damages at your hands.

Now the defendants come into court, and do not deny the building of the dam, and they do not deny the raising of the level of the water to a certain number of feet; but they do deny that when they built the dam, that they did anything unlawful, which the plaintiffs allege they did do. They claim that in building that dam they were acting within their legal rights; that H. H. Townes, trustee, as they allege, for his wife, had such control of the lands in question when the dam was built, as enabled him to give to the builders of the dam the legal right so to do. They claim that a certain corporation, chartered by the legislature of this State in 1873, the Edgefield Cotton and Woolen Manu-

2—46

facturing Company, had conferred upon it by the legislature the power to build the dam across the Savannah River at a certain point below Stevens Creek, Edgefield County, to terminate at a certain point, 1,000 yards, I believe, below the mouth of Red Creek. They claim that this cotton and woolen manufacturing company having this power, had a right to build that dam there abutting on this land, to purchase those three 36–100 acres from H. H. Townes, trustee; and that when afterwards the Augusta Canal Company built the dam and not the cotton and woolen manufacturing company, and still later when the city council of Augusta acquired from the canal company the power to maintain the dam, acquired the whole property, and that they, the defendant, the city council of Augusta, are still within their legal rights in claiming that they have not in the past or in the present made themselves liable to a suit for damages at the hands of the plaintiffs. I think, in brief, that is the case of the defence. Is there anything I have left out?

Mr. Sheppard: I think not.

The Court (to the jury): They deny that they are liable for any damages, and ask that the complaint be dismissed.

Now, gentlemen, in this case, as in all cases tried by jury, the facts in evidence are solely for you. You must consider all that was proved, or attempted to be proved, in your hearing on the witness stand. One of the principal issues of fact for you to consider is this, has the land of the plaintiffs been damaged as alleged in the complaint? Have the bottom lands of the Townes property been injured because of the construction of this dam; or, if they have been injured so as to be rendered unfit for cultivation, was it caused by the dam, or by the increased frequency of freshets on account of the land being stripped of its forest timber; or have the lands been abandoned from another cause—the lack of labor—as to which there is evidence submitted to you, that since emancipation of the negroes it has not been as easy as formerly to get the labor to keep such bottom land in a cultivatable condition. You have to decide that

point. If you decide that the lands in question are not fit for cultivation, and have been rendered so by increased freshets, or by lack of ditching and work, or by seapping of water from the hills and frequent rains, then, of course, you need not go any further; you may stop there. That would show, that if the lands have been damaged, the damage did not come from any act of the defendant.

But if you come to the conclusion that the lands have been damaged, and that the damage resulted directly from the effect of the dam being there, backing water up, forming sandbanks at the mouths of former streams that use to run to the river, and causing the water to spread over the land, or by saturation or seapping, then, of course, you will take the next step and ask, who is responsible for the damage? If the damage has come from building that dam, is it the city council of Augusta? On that point I charge you, that if the city council of Augusta owns, controls, and maintains said dam, and by so doing has inflicted damage upon the lands in question, and if that council has shown no authority by law of this State for constructing and maintaining the said dam, or if it has not shown that it had authority so to do from the plaintiffs, or from some one who had the power in law to give such authority, then, in such case, the city council of Augusta would be justly held liable for any special damages it might cause to the lands of the plaintiffs resulting from the construction of the dam, whether by back water, or increased overflows, or by what is vernacularly called "sobbing" of the land, by water seapping through it, by saturation, so as to render it unfit for cultivation. After having considered these two principal issues of fact—first, has the land been damaged by the defendant, or has the land been damaged by the construction of the dam; second, if so, is the defendant liable to pay damages? If you decide these two issues against the defendant, the next step will be to ascertain how much have plaintiffs been damaged? How much has been proved? You cannot go beyond the amount claimed—$1,950. You must ask how

many acres of land have been damaged, if they have been
damaged at all?    What is the annual rental value of those
lands?  For how many years have they been damaged?  And
in doing so you must be guided by the evidence, and not
by your view of the value, but by the annual rental value
proved, and the value of the amount of the yield as proved
in evidence, if it has been proved.    While on that point,
before I forget it, if you come to the conclusion to find a
verdict for the plaintiffs, I charge you that the line indicated
by Mr. Croft, just before he took his seat, would be the
proper one—that the senior plaintiff would not be entitled
to more damages than for six years, and the junior plaintiff
for seventeen years—if you take that view of it.

Gentlemen, in considering the whole case, the rule is,
that plaintiffs must make out their case by the preponder-
ance of the evidence, the burden of proof is on the plain-
tiffs—that is to say, they must make out their case by the
greater weight of the testimony, so you can confidently say
that it is more likely than not that they have been damaged
in the way they allege.    It will not be enough that the
plaintiffs' evidence and the defendant's evidence should
leave your minds in doubt, regarding the two sides as
evenly balanced; in such case you will have to find for the
defendant.    The plaintiff's case must outweigh that of the
defendant before you can find a verdict for the plaintiffs.

Counsel for the plaintiffs have requested me to charge
you, as a matter of law, the following:

"1. That in order for the plaintiffs to recover damages
against the defendant, it is necessary for them to show title
in themselves.    That this may be done by tracing a paper
title in themselves back to the grant from the State.    Or
by showing possession in themselves and in those from
whom they claim under for a period sufficiently long to
presume a grant, which period is continuous for the term
of twenty years.    Or, when both parties claim from a com-
mon source, then by showing a valid title coming from a
common source, which is paramount to the title which the

defendant relies upon." I charge you that as law. I believe you both claim from a common source. When the jury is called upon to decide title to real estate, if the two conflicting claims can be traced back to a common source, you can stop there, you need not go further back than that in tracing up title.

"2. That a grantee claiming title from a grantor can have no better title than that held by such grantor." In common simple language that means, a man who buys a piece of land can exercise no greater rights, immunities, and privileges than he has bought—when he buys a piece of land, he has no greater rights than the one who sold it to him.

"3. That a trustee who holds land for another person has only such power and authority over the trust property as is given him in the instrument creating the trust, and he who claims title under a deed made by a trustee is required by the law to show that such trustee had the power to make the deed under which such person claims." I charge you that is the law. So in this case you will consider under what power was Mr. Townes made trustee, if he was made trustee. If he was made trustee of his wife's property, what powers were conferred upon him, with regard to that property? Was he authorized to make sale of any property?

"4. That under the will of John Jones, deceased, Sarah V. Townes has only a life estate in the lands alleged to have been damaged in the complaint, and that at her death the remainder in fee vested in her children." I charge you that, on examination of the will, in the sixth and eleventh sections, John Jones did give to his grand-daughter, then called Sarah V. Harris, afterwards Sarah V. Townes, a life estate in the lands in question, with the remainder to her children. That was the purport of the request to charge. That is the law, and my interpretation of the will in this case.

"5. That corporations have only such power as are ex-

pressly granted in their charters, or such as are necessarily implied for carrying out the purposes for which the corporation was chartered." That is true; it is the law. When a corporation goes before the legislature and gets its charter, that charter is the limit of its powers. The power must be expressly granted or implied by the provisions of the charter.

"6. That if the legislature grants the right to a person to erect a dam across a navigable stream, the effect of such right would be to protect the person who erects such a dam from indictment for creating a nuisance; but it would not protect the person from a suit for damages, for overflowing or injuring the lands of any other party by the back water caused by the erection of such a dam." I so charge you.

"7. That the franchise to erect a dam across a navigable stream granted to a corporation in its charter, cannot be transferred to another corporation, unless the right to make such transfer is given in the charter. And in the act of the legislature incorporating the Edgefield Cotton and Woolen Manufacturing Company, there is no such right given." I so charge you.

The act incorporating the Edgefield Cotton and Woolen Manufacturing Company sets out that its purpose was for the manufacturing and finishing all goods of which cotton or wool may form a part; and it confers upon it the right to erect a dam across the Savannah River below the mouth of Steven Creek, in the county of Edgefield, terminating on the opposite side of the said river, at any point not exceeding 1,000 yards below the mouth of Red Creek. But no where does it authorize the Edgefield Cotton and Woolen Manufacturing Company to transfer, sell or convey away to another corporation or person, the rights and franchises thus conferred upon it. Mr. Davidson, in arguing the case this morning, read to you from the acts of assembly of Georgia, 1845, incorporating the Augusta Canal Company, and he afterwards read to you an amendment to that act, of 1849, giving that company the power to sell, transfer, and

convey the rights and franchises heretofore entrusted to its care by the legislature of Georgia. Is there any such provision in the original charter of the Edgefield Cotton and Woolen Manufacturing Company, or has there been a subsequent amendment to that act, giving them the power? Then they could in law transfer, assign or sell whatever franchises, privileges, immunities, rights, and powers that were conferred upon them by the original charter; but there is no such provision in the charter.

"8. If the jury believe from the evidence that the dam across the Savannah River as maintained by the defendant causes any of the plaintiffs' lands to be injured by back water caused by such dam, either by overflow or by sobbing and saturating the same, so that they were rendered unfit for agricultural purposes, then the defendant would be liable to the plaintiffs for all damages caused by such back water upon their lands." I so charge you.

"9. If the jury believe from the evidence that the dam maintained by the defendant across the Savannah River causes the water in said river in times of the ordinary, usual, and expected freshets in said river to overflow lands of the plaintiffs that would not be overflowed in the time of such freshets if the dam were not there, and that such overflow injures the plaintiffs' lands and renders them unfit for agricultural purposes, then the defendant are liable to the plaintiffs for all damages caused by such overflow." I so charge you.

"10. If the jury find for the plaintiffs, they should render a verdict in their favor for such an amount as they believe from the evidence they have been actually damaged, they should give no more than this, but they should give all damage which they find has been fairly proven by the evidence." I so charge you. I have said so already.

"11. That in estimating the damages for agricultural lands the use of which the owner has been wrongfully deprived, the true measure is to ascertain from the evidence

the fair rental value of such land per year." I have already charged you that, and do so again.

Now, Mr. Foreman and gentlemen, the defendant's counsel submit the following requests to charge:

"1. The burden of proof is upon the plaintiffs, and they must establish their case by the preponderance of the evidence; hence, if the jury doubt as to how the evidence preponderates, they must solve the doubt in favor of the defendant." That is in accordance with what I have already charged you, and that is the law.

"2. If you believe from the evidence that the dam was built under the authority conferred by the charter of the Edgefield Cotton and Woolen Manufacturing Company, granted by the State of South Carolina, then I charge you that the dam is a lawful structure, so far as the plaintiffs are concerned, and your verdict should be for the defendant." I would charge you that, as it stands, if the said charter contained the power to transfer and delegate its powers and franchises to others, and if there was evidence that the said powers and franchises were actually and legally transferred and delegated to those who built the dam in question; of which evidence you, of course, would have to be the judges. But the charter of the Edgefield Cotton and Woolen Manufacturing Company contains no such power. In the absence of such power conferred by the legislature, Edgefield Cotton and Woolen Manufacturing Company could not legally transfer and delegate the powers and franchises conferred upon it by the legislature. Only legislative authority which confers powers and franchises can confer the power to transfer and delegate those powers and franchises. The second request of the defendant, therefore, must be modified, and with these modifications, explanations, thus given you, I charge it as law.

"3. The mere fact that the defendant has constructed or maintained a dam across the Savannah River, abutting on the land of plaintiffs, does not necessarily give the plaintiffs any cause of action against the defendant, even though the

construction of the dam may have resulted in injury to the plaintiffs, if the defendant was authorized to construct said dam by the legislature of the State." I charge you that, adding to it the following, to make it complete: But if the authority relied on by the defendant is the charter of the Edgefield Woolen and Manufacturing Company, I charge you, as a matter of law, that said charter, while authorizing the construction of a dam across the Savannah River by the said company, gives no authority to that company to transfer, sell or convey that power or privilege to the Augusta Canal Company, or the city council of Augusta, or any one else.

"4. The rightful exercise of eminent domain excludes all idea of wrong-doing; hence, if you believe from evidence that the construction of the dam in question was authorized by law, and if you believe from the evidence that it was constructed for a public purpose, then the plaintiffs are not entitled to recover in form of action, and you must find for the defendant." This fourth request speaks "of the rightful exercise of the power of eminent domain;" this, I apprehend, is introduced in connection with the right conferred on the Edgefield Cotton and Woolen Manufacturing Company to erect a dam across the Savannah River at the point indicated. As to this, I charge you that, in so far as the interests of private individuals and property holders of the neighborhood are concerned, the cotton and woolen company could not exercise the right of eminent domain. This tremendous power may be invoked only by the sovereign State herself, or by such public or *quasi* public corporations as are authorized by the legislature to invoke it, exercise it, for some public purpose. Corporations empowered to construct railroads, canals or turnpikes can exercise the power of eminent domain, because railroads, canals, and turnpikes are looked on by law as enterprises constructed for a public purpose, and the construction of which must not be obstructed or prevented by private individuals in the protection of private interests. Private interests must

yield to the public good. The law provides, however, that adequate compensation must be given the property holders whose property has been taken under the exercise of the power of eminent domain. The Edgefield Cotton and Woolen Manufacturing Company was a private corporation, organized to manufacture cotton and woolen goods—"for the purpose of manufacturing and finishing all goods of which cotton or wool may form a part." It has not yet been decided, in this State at least, that the building of factories is such a public purpose as would authorize the exercise of the power of eminent domain in their behalf. They may be of great public benefit, and doubtless they are, but they cannot be regarded by the law on the same footing with railroads and canals. Section 1473 of our Revised Statutes, referred to by counsel, cannot apply to this case, as it refers only to corporations empowered to construct railroads, canals or turnpikes; it does not include the building of factories or the building of dams. That fourth request, as modified and explained, I charge as law; but I could not charge it as it stands.

"5. If you believe from the testimony that the construction of the dam was authorized by law, and if you believe from the evidence that H. H. Townes, trustee of his wife, was in control of the land, and authorized the construction of the dam, then the construction of the dam was not unlawful, and plaintiffs are not entitled to recover in this action." I refuse to charge that as law. Before I could so charge you, I shall have to add, you must first be satisfied by the evidence under the law, as given by the court, that H. H. Townes, as trustee of his wife, had power in law to authorize the construction of said dam, or the conveyance of the property upon which it abutted, the 3 36–100 acres.

"6. If you believe from the evidence that the plaintiffs' right of action accrued more than six years before they attained their majority, and if you believe from the evidence that the action was not instituted within one year after either of plaintiffs arrived at the age of twenty-one years,

then, as to such plaintiffs, the action is barred by the statute of limitations of this State, in such case made and provided." I refuse this charge, gentlemen.

"7. If you believe from the evidence that the construction of the dam was authorized by the laws of the State of Georgia, and if you do not find from the evidence that the dam was raised above low water mark on the South Carolina side of the river, then, under the laws of Georgia, the dam is a lawful structure, and plaintiffs cannot recover in this action."

The Court (to Mr. Sheppard): Is this meant to raise the question of jurisdiction?

Mr. Sheppard: The treaty of Beaufort as to the boundary line.

The Court: I refuse to charge you that, gentlemen. That may or may not be the doctrine of the treaty of Beaufort. I do not know that the junior counsel for plaintiffs is correct in his inference that the high contracting parties who met at Beaufort became intoxicated to such an extent, that neither side knew what they were doing; but I do know no lawyer or judge in his sober senses can exactly make out what the treaty does mean. I, therefore, am controlled in my view of the boundary line by section one of our revised new statutes, which is to this effect: "That the State of South Carolina is divided from the State of Georgia by the Savannah River, from its entrance into the ocean to the confluence of the Tugaloo and Chatooga Rivers; thence by the Chatooga River to the North Carolina line aforesaid, in the 35th. degree of north latitude, the line being low water mark at the southern shore of the most northern stream of said rivers where the middle of the rivers is broken by islands; the middle thread of the stream where the rivers flow in one stream or volume."

If there is evidence that at the place indicated where the dam is said to be now standing, the stream is broken by islands, then I charge you that the boundary line is low water mark at the southern shore of the most northern

stream.   You must say whether that is the Georgia or Carolina shore.   If there is no evidence of an island there, then I charge you "the middle thread of the stream where the rivers flow in one stream or volume" will govern you in this case.

I have taken longer perhaps than I ought to have taken. You have seen that I was compelled to take a good deal of time in going over the numerous requests furnished by both sides.

If, in your consideration of facts, you come to any troublesome point in the law, and you require further instruction, indicate this to the court by knocking on the door, and I will call you in and instruct you further.   If at any time you desire any part of the evidence, it is here in the hands of the stenographer, and any part or all of it can be read to you.

You will take the complaint, gentlemen.   If you come to a conclusion in favor of the defendant, you will simply say, we find for the defendant, and sign your name as foreman, Mr. Bell;  if you come to the conclusion that the plaintiffs have made out their case to your satisfaction, by the preponderance of the evidence, then you will compute the damages under the law and evidence, and will say, we find for the plaintiffs—so many dollars damages, writing it out in words, and then sign your name as foreman.

The Foreman: May I ask, was the dam across the river legally built according to the charter of the Edgefield Cotton and Woolen Manufacturing Company?

The Court: I charge you this, that the Edgefield Cotton and Woolen Manufacturing Company had the power to build a dam, but it had no power to transfer the power to anybody else to build a dam.

The Foreman: That is what I got mixed on.

The Court: It had the power in itself or its servants to construct a dam at the point indicated in the charter, but it had no power, under the law, to transfer that power to build a dam to the Augusta Canal Company, the city council of Augusta, or to any other corporation or person.

The jury rendered a verdict in favor of plaintiffs for $600. Defendant appealed.

*Messrs. Sheppard Bros.*, *W. T. Davidson* of counsel, for appellants.

*Messrs. Croft & Tillman*, contra.

March 9, 1896.   The opinion of the court was delivered by

MR. JUSTICE POPE.   On the 28th. day of May, in the year 1894, the plaintiffs began this action against the defendant in the Court of Common Pleas for Edgefield County, in this State, for $1,950 damages, alleging as a cause of action that twelve or fifteen years ago, the Augusta Canal Company, unlawfully and without the consent of plaintiffs, caused to be built a dam across the Savannah River and upon their said lands, and did wrongfully dig up the same and make large excavations thereon, and built thereon a stone dam; that said dam being built across said river caused the water therein to be backed up and raised far above its level in the natural flow of said stream, and thereby caused a large portion of the plaintiff's tract of land, situate in Edgefield County, in this State, and consisting of 835 acres, and which lies next to and adjacent to said river, and which was formerly cultivated, to become so sobbed and saturated by said back water as to be unfit for agricultural purposes, and necessitated the abandonment of the same for planting purposes; and the plaintiffs further charge that the back water caused in the said river by the erection of said dam has caused a "considerable portion of their said tract of land to be overflowed and rendered useless, and thereby, and on account of said sobbing and overflowing of said lands, deprived the plaintiffs of the use of the same." The plaintiffs further alleged that the defendant, for the past twelve years, pretends to have acquired said dam, and "that, in disregard of the plaintiffs' rights, the defendant has ever since entered upon their (the plaintiffs') said lands, and have, during the

whole of said period, maintained said dam, and have continuously thereby caused a large portion of the plaintiffs' said tract of land, which lies next to and adjacent to said Savannah River, and which was formerly cultivated, to become so sobbed and saturated by said back water, as to be unfit for agricultural purposes, and have necessitated the abandonment of the same for planting purposes; and also that the back water, caused in said river by the erection of said dam, has caused a considerable portion of their said tract of land to be overflowed and rendered useless, and thereby, and on account of the said sobbing and overflowing of said land, deprived the plaintiffs of the use of the same;" and plaintiffs also allege that the defendant, by means of the said dam so erected and maintained, has caused the ordinary freshets in said Savannah River to overflow the plaintiffs' lands, which, before said dam was erected, was not subject to overflow by ordinary freshets in said river, rendering said lands unfit for use as agricultural lands, thereby necessitating an abandonment of the use of said lands for planting purposes—all of which have damaged the plaintiffs $1,950. On the said 28th. of May, 1894, caused warrant of attachment to issue out of the Court of Common Pleas for Edgefield County, in this State, through the clerk thereof, and under the same the sheriff attached a portion of defendant's land lying in said Edgefield County, in this State.

Thereafter the defendant, the city council of Augusta, appeared in said action, and duly answered the complaint on the merits. When the action came on for trial before his honor, Judge Benet, and a jury at the fall term, 1894, of the Court of Common Pleas for Edgefield County, the defendant demurred to the complaint on two grounds—want of jurisdiction of the person of defendant, and, secondly, because the complaint failed to state a cause of action. The demurrer was overruled on both grounds. From this decision the defendant appealed, and such questions are raised for the decision of this court. We will consider these grounds now.

As to the ground of appeal relating to jurisdiction, it will be necessary to state the facts upon which it was heard in the court below. Briefly stated, they are as follows: When the action was commenced on the 28th. May, 1894, the clerk of the Court of Common Pleas for Edgefield County did not, by his own hand, sign the warrant of attachment, but having to be absent from his office on that day, and having been apprised that the warrant of attachment would be applied for, he directed John Kennerly, Esq., who acted as his deputy, to sign his name for him and attach the seal of his office as clerk of court to said warrant of attachment. This fact was not known to the defendant; the copy served upon it, of course, did not disclose this alleged defect. Hence, supposing that the warrant of attachment and the proceedings thereunder were regular, the defendant appeared by counsel and made its answer to the merits. Since that time, it has discovered what it alleges is a fatal irregularity in the warrant of attachment, and now seeks not to set aside the warrant of attachment, but actually to claim that its answer to the complaint on the merits shall be ignored. The fault, if any, consisted in the neglect of the defendant to scrutinize for itself the original warrant of attachment, and, if this fact of substituted signing by the clerk existed, to have adopted a course in law to avoid such warrant of attachment. All of these matters are considered in our recent case of *Tillinghast* v. *Boston &c. Co.*, 39 S. C., 484, where reliance was had upon *Pennoyer* v. *Neff*, 95 U. S., 714, and we will not, therefore, address ourselves to unfolding the law governing jurisdiction of the person acquired by the issuance of a warrant of attachment, and attaching thereunder the real estate of a foreign corporation situated in this State. It may be well, also, to refer to the more recent case of *McCreery* v. *Davis*, 22 S. E. Rep., 178. But we have heretofore expressly ruled that when any one—foreign corporation, or a non-resident person or firm—appears and answers to the merits, by that voluntary act the court acquires jurisdiction of the person

of the defendant, and jurisdiction of the person once acquired, for all the purposes of the action the court may maintain the same. See *Gravely* v. *Gravely*, 20 S. C., 93; *Chafee* v. *Postal Tel. Co.*, 35 S. C., 372, and other cases decided since those cases. We must sustain the Circuit Judge in overruling the demurrer on this ground.

It remains to consider the question whether the complaint states a sufficient cause of action? We think it does; as was very clearly pointed out by the Circuit Judge, this is not the case against a railroad, telegraph, or turnpike company, for an improper use of a public franchise, entitling the holder of the public franchise to enter upon the lands of another under the warrant of legislative power, through the well recognized and, we may say, the well defined doctrine of eminent domain. But it is a case where the complaint alleges an injury to the plaintiffs by reason of a stone dam so changing the volume of the water of the Savannah River alongside of plaintiffs' lands, that when, before the dam was built, such lands were used for the purpose of raising crops thereon, and which lands, since the dam was built, by reason of damming up the waters of said river, not only are so permeated by the waters of said river at ordinary times as to render such lands useless, but that freshets of ordinary height, which, before said dam was built, did not get beyond the banks of said river, now overflow said banks of the river, and render useless for cultivation the lands of plaintiffs adjacent to said river. We think the complaint states facts sufficient to constitute a good cause of action. There was, therefore, no error in overruling both grounds of demurrer.

After the demurrer was overruled, the defendant interposed its answer, which, substantially, lays bare these facts as a defence to plaintiffs' action. In the year 1845, the legislature of the State of Georgia chartered the Augusta Canal Company, whose object was to lead into the city of Augusta the waters of the Savannah River, and for this purpose a dam was projected into that river to give an im-

petus to the waters of that stream to flood the canal. In the year 1871, dreams of a richer fruition, including that of a full supply of drinking water from the canal in question, induced the legislature of Georgia to increase the powers of that company already chartered. Soon afterwards, in the year 1873, the legislature of the State of South Carolina created, by charter, the Edgefield Cotton and Woolen Manufacturing Company, vesting in said company the right to run a dam across the Savannah River, beginning at a point below the mouth of Big Stevens Creek, on the South Carolina side, and running across to the Georgia side at a point not more than 1,000 yards below Red Bank Creek. The parties obtaining this last charter organized thereunder, and purchased more than three acres of land on the South Carolina side of the river and on the banks thereof, for the purposes connected with said dam across the Savannah River, from H. H. Townes, the elder, who styled himself trustee for his wife, Sallie V. Townes, who, it turns out, held the lands now owned by the plaintiffs as a life tenant therein, with remainder thereafter to the plaintiffs, at the price of $500 in cash. On the same day, in October, 1873, that the foregoing deed of the three acres was made to the South Carolina corporation, the said H. H. Townes, senior, as trustee of his said wife, made this agreement with the Augusta Canal Company: "Georgia, Richmond County. This agreement made and entered into this 18th. day of October, A. D. 1873, between Henry H. Townes, as trustee for Sallie V. Townes, of the county of Edgefield and State of South Carolina, of the first part, and the Augusta Canal Company, a corporation chartered by the laws of the State of Georgia, of the county first aforesaid, of the second part—witnesseth: that the said party of the first part, in consideration of the sum of $500 to him in hand paid by the said party of the second part (the receipt whereof is hereby acknowledged), has agreed, and by these presents doth agree, that the said party of the second part, as its assigns, may build upon the lands of the party of the first

3—46

part, lying and being in the Savannah River, in the county of Edgefield and State of South Carolina, opposite the head of the Augusta Canal, the abutment and walls of a dam to be constructed across the Savannah River at said point, sufficient to keep a depth of eleven feet of water in proposed enlarged canal of the party of the second part; provided, that the same shall not (be) more than four feet above the abutment wall of the present dam of said company. And the said party of the first part further agrees, that in case the said company shall build said dam, that said company shall be allowed to enter upon and take from said lands, at any point they may select, within fifty yards of the bank of the said Savannah River, stone, gravel, earth, and other materials for building said dam and keeping it in repair. And the said Henry H. Townes, as trustee as aforesaid, in consideration of the aforesaid sum of $500 to him paid, *and the agreement of the said party of the second part, hereinafter named* [italics ours], hereby grants, conveys, and confirms unto the party of the second part, its successors and assigns, in perpetuity, the right, privilege, and easement of building said abutment and walls, and taking and using said stone, gravel, earth, and other materials as aforesaid. *It is further agreed by said party of the second part, that the said party of the first part, his successors and assigns, shall be allowed to draw from the water of the said canal company, to his mill now erected on said land on said Savannah River, water equal to thirty horse power, and also navigation through said canal with his boat, to transfer cotton and other produce and supplies to and from the city of Augusta, free of toll* [italics ours]. It is further agreed that the opening and gates for water to supply the mill and machinery of the party of the first part shall be made at the expense of the party of the second part. The said party of the first part further agrees that he will not grant or allow to any other person or persons, natural or artificial, the right to any water power, or to draw water for propelling machinery through or over his lands, except the thirty horse power

hereinbefore referred to. And the said party of the first part hereby releases, relinquishes, and forever discharges the said party of the second part, and its successors and assigns, from any and all damage, injury, loss or detriment that may be caused to said land by the erection of said dam and the abutment and walls aforesaid from overflow, and in any other manner whatever. It is further agreed that the said party of the second part may, at option, in lieu of cutting a raceway to said mill, move said mill and the machinery and fixtures connected therewith up to said dam, or so near to the same as said company may decide. In witness whereof the said party of the first part has hereto set his hand and seal, and the said company has caused these presents to be signed by its president, having no seal or secretary.

"HENRY H. TOWNES, (L. S.) Trustee for Sallie V. Townes.

"CHAS. ESTES, (L. S.) President Augusta Canal Company."

The defendant's answer further shows: That the dam was constructed by the Augusta Canal Company in the years 1873 and 1874; that all the privileges set out in the contract by and between Henry H. Townes, as trustee for his wife, Mrs. Sallie V. Townes, of the first part, and the Augusta Canal Company, of the second part, have been accorded to the said Henry H. Townes, as said trustee of his wife during her life, and since her death and up to the attainment of the age of twenty-one years of the plaintiffs respectively, to the said Henry H. Townes as their guardian, and since said plaintiffs have attained their majority, with and to them; that at the present time the plaintiffs are in the enjoyment of the water privileges under said contract; that said dam was constructed without any protest from any of them; that the dam has not injured the lands as complained of by the plaintiffs; that the plaintiffs have not been damaged at all.

Upon these pleadings the parties went to trial. Plaintiffs offered testimony to show their title to land in dispute as devised under the will of their great-grand-father, John Jones; that their mother, Mrs. Sallie V. Townes, died in

1877; that their father had been appointed her trustee in the year 1869, before she attained her majority, and that she reached the age of twenty-one years in 1872. But no testimony was introduced to show that the defendant or the Augusta Canal Company had violated the terms of the contract hereinbefore recited at length. At the conclusion of plaintiffs' testimony defendant moved for a nonsuit, which was refused.

The defendant then unfolded its defence. At the conclusion of all the testimony, it again moved for a nonsuit, which was again refused. The refusal of the Circuit Judge to grant the motion for a nonsuit is made the ground of appeal. Was it error on the part of the Circuit Judge to refuse to grant the motion for a nonsuit? We think it was, for these reasons: on the demand of the Circuit Judge to know if the plaintiffs demanded that the dam should be removed, the plaintiffs replied, through their attorney, Mr. Croft, that they did not demand the removal of the dam; so that the naked question was one of damages for the backing of water upon their lands, so that it was not cultivated, and, also, that by reason of that dam, the ordinary freshets in the river would cause the water from the river to overflow their lands adjacent to the river, thereby rendering them unfit for cultivation. Now, granting that Henry H. Townes, when he claimed to act as trustee for his wife, Mrs. Sallie V. Townes, and made a contract with the Augusta Canal Company, whereby he stipulated that the said company might build the dam across the river, and also stipulated for thirty horse power of water power to run his mill, &c., had no legal power to make such contract so as to bind his wife, or to bind the plaintiffs. Mrs. Townes afterwards would have been able to confirm the unauthorized act of her trustee. Grant that, even if she did or did not confirm such conduct of her trustee, and such a contract could not, of itself, be made to operate upon the rights of these plaintiffs, who did not receive these lands through her, but as purchasers under John Jones' will, yet it

was, and is now, in their power to make that contract effectual. This may be done directly or it may be done indirectly; it might have been by a deed or other solemn contract; again, it might have been done, not by a deed or other solemn contract, but, just as effectually, by *conduct*. When the plaintiffs held on to the benefits under the supposed deed between Henry H. Townes, as trustee of his wife, Sallie V. Townes, and the Augusta Canal Company, by holding fast to the use of the thirty horse power of water power with which to propel their mill and machinery, furnished by the dam, constructed under such contract, they tied themselves, hands and feet, so to speak. The law wisely says you shall not receive the benefits of a transaction and at the same time refuse to bear the burdens incident to such a transaction. As to a deed, for instance, you cannot cling to its benefits and at the same time refuse its burdens. So as to wills. There was no testimony in the case which showed that these plaintiffs did not still cling to these water privileges, but the testimony was to the contrary. This being so, it was error in the Circuit Judge to refuse the motion for a nonsuit. Such being the conclusion at which we have arrived, it is unnecessary for us to pass upon the other interesting questions raised by the appeal, for they cannot be said to fairly arise upon the record.

While I think the following should be our judgment: "It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the action be remitted to the Circuit Court, with directions that the Circuit Court grant a judgment for a nonsuit." Still, as the majority of the court think and hold that our judgment should be confined to holding it error in the Circuit Court not to have granted the nonsuit demanded by defendant, and to ordering the cause back to the Circuit Court for a new trial, such will have to be the form of the judgment. Accordingly, it is the judgment of this court, that the

judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE McIVER.  While I agree that there was error in refusing the motion for a nonsuit, I am not prepared to hold, either that this court should now order a nonsuit or remand the case to the Circuit Court, *with instructions* to grant a nonsuit.  On the contrary, it seems to me that the proper course is to reverse the judgment of the Circuit Court, and to remand the case for a new trial, under the authority of the cases of *Willis* v. *Knox*, 5 S. C., 474, and *Sampson* v. *Singer Mfg. Co.*, 5 S. C., 465, in which latter case it is said: "If the nonsuit was improperly refused, and the nature of the plaintiffs' demand was such that no recovery could be lawfully had, this court will grant the motion, and dismiss the plaintiffs' complaint.  If, however, it was merely a case of insufficiency of proofs adduced at the trial to support a cause of action in itself of a proper legal nature, this court will not dismiss the complaint upon appeal, but order a new trial, to afford the plaintiff an opportunity to make better proofs."  These two cases have been recognized in the following subsequent cases: *Carter* v. *R. R. Co.*, 19 S. C., at page 30; *Carrier* v. *Dorrance*, 19 S. C., at page 34; and *DeCamps* v. *Carpin*, 19 S. C., at page 126.  See, also, *Wiggins* v. *Vaught*, Cheves, 91.

MR. JUSTICE GARY.  I concur in the views expressed by Chief Justice McIver.