## No. 10609

### McCOWN-CLARK COMPANY v. MULDROW

#### (106 S. E. 771)

1. Sales—Buyer Not Required to Minimize Damage by Buying in the Market When Goons Not Obtainable.—A buyer injured by the seller's failure to deliver, must minimize his loss by going into the market and purchasing other goods to supply his needs, but, when the season has passed and he cannot procure the needed goods, the rule does not apply.

2. Sales—Evidence of Difference in Fertilized and Unfertilized Crops Held Admissible on Question of Damages For Nondelivery. —When a buyer of fertilizer could not procure other fertilizer on the seller"s failure to deliver, evidence as to the difference between the crop on which the fertilizer was to be used and fertilized crops on adjoining land of similiar quality worked in the same way was admissible.

3. Appeal and Error—Allowance of Interest Not Reviewable When Not Raised in Trial Court.—Where no question was raised in the trial court as to the allowance of interest on the account sued on, such question cannot be considered in the Supreme Court.

Before Peurifoy, J., Florence, April term, 1919. Reversed and new trial ordered:

Action by McCown-Clarke Company against A. W. Muldrow. From judgment for plaintiff the defendant appeals.

*Messrs. Whiting and Baker* for appellant, cite: *Rule for estimating damages caused by breach of contract*: Ann. Cas. 1917 B. 1192. *Sutherland on Damages*, Vol. 2, 2339, 2348; 56 Am. Rep. 52 (Ala.;) 37 Am. St. Rep. 611 (N. C.;) 159 N. C. 439; 27 Am. Rep. 13 (N. Y.;) 13 Am. Rep. 438; 20 Am. Rep. 425; 40 Am. Rep. 280 (Texas;) 42 Am. St. Rep. 125 (Cal.;) 92 Am. St. Rep. 443 (Mich.;) 93 Am. St. Rep. 474 (Neb.) *No interest should have been allowed*: 100 S C. 100.

*Messrs. Arrowsmith, Muldrow, Bridges & Hicks,* for respondent, cite: *Measure of damages for breach of contract to deliver personal property for a market price*: 100

S. C. 359; 92 S. C. 114; 91 S. C. 417; 88 S. C. 572; 81 S. C. 181; 75 S. C. 343; 68 S. C. 363. *Points not raised or considered on circuit are not properly before this Court for review*: 25 S. C. 436; 25 S. C. 476; 28 S. C. 38; 29 S. C. 491; 30 S. C. 539; 31 S. C. 389; 40 S. C. 337; 41 S. C. 29; 41 S. C. 74; 27 S. C. 215; 27 S. C. 331; 105 S. C. 100; 103 S. C. 75; 86 S. C. 217; 101 S. C. 299; 101 S. C. 493. *Record must show that point was made before the Circuit Judge*: 32 S. C. 87; 83 S. C. 396; 94 S. C. 324.

April 13, 1921.

The opinion of the Court was delivered by Mr. Justice Fraser.

The facts in this case involved in this appeal are as follows: The plaintiff sold and delivered to the defendant a quantity of fertilizers. The fertilizers were to have been delivered in March for immediate use. The fertilizers were not delivered until June. The defendant, by answer, set up the failure to deliver in the contract time and damages caused by the delay. The defendant offered to show the difference between the crops made on adjoining land of similar quality, worked in the same way and with the same seasons, on which the fertilizers were used in March, and the yield on his land on which the delayed fertilizers were used. The trial Judge excluded the testimony on the ground that the measure of damages was the difference between the contract price and the price at the time of delivery specified in the contract.

I.   To this ruling exception was taken. The general rule is beyond question, but it does not apply to this case. It is well settled that when the reason of the rule fails the rule does not apply. One who suffers injury from the violation of his contract must minimize his loss by going into the market and purchasing other goods to supply his needs. When, however, the season has passed and in-

jured party to the contract cannot procure the needed goods, the reason of the rule does not apply, and the rule is not applicable. The allegation is that the defendant could not procure the fertilizer when needed, and he could not minimize his loss. The testimony offered eliminated the uncertainty usual in such cases, and should have been admitted. The exception that raises this question is sustained.

II. The second question is as to the allowance of interest on the account. The record does not show that this question was raised in the trial Court, and it cannot be considered.

The judgment is reversed and a new trial ordered.

Mr. Chief Justice Gary and Mr. Justice Watts, concur.

Mr. Justice Cothran, (dissenting:) I do not concur in the conclusion of a majority of the Court in the disposition of this appeal, and think that the judgment of this Court should be as indicated at the foot of this opinion.

This being an appeal from a judgment entered upon a verdict in favor of the plaintiff by direction of the Circuit Judge, the evidence, and all reasonable inferences therefrom, will be interpreted most strongly in favor of the defendant.

The following conclusions of fact may therefore, for the purposes of this appeal, under the above rule, be drawn from the evidence, it being understood that this is done, not at all as findings of fact, but for this appeal only: Prior to March 1, 1910, the plaintiff and the defendant contracted for the sale and purchase of certain fertilizers, to be delivered by the plaintiff during the month of March; the fertilizer was intended to be used by the defendant upon his farm in the planting of crops which required the application of the fertilizer at the time of planting; which facts were known to the plaintiff, and with reference to which the contract was

entered into; the fertilizer was not delivered until June 6th, which was too late for the defendant to make use of it in the manner intended; the defendant testified (quoting from the case:) "That, expecting the fertilizer to be delivered upon this order, and relying upon such promise of delivery, he failed to order sufficient other fertilizer until too late to procure delivery of such fertilizer elsewhere;" he planted a considerable part of his lands without properly fertilizing them, on account of the plaintiff's failure to make delivery as agreed.

The defendant offered no evidence as to the difference between the market price of the fertilizer at the appointed time of delivery and the contract price, but, by counterclaim and evidence tendered to support it, claimed that he had been damaged in the sum of $500 by the breach of the plaintiff's contract; this evidence was in the form of testimony of witnesses to the effect that the crops made upon adjoining lands of similar quality, worked in the same way and with the same seasons, when fertilizer was applied at planting time, were more abundant than the crops of the defendant under the circumstances; objection was sustained by the Circuit Judge to this testimony, and, there being no other offered evidenced of damage, the Circuit Judge directed a verdict in favor of the plaintiff for the amount of their account with interest.

Two main questions are involved in this appeal: (1) Was there error in directing a verdict in favor of the plaintiff? (2) Should interest have been allowed upon the account?

The first question: The solution of this question depends upon the solution of a subsidiary one, as to the admissibility of certain testimony. The only defense that was set up to the plaintiff's cause of action was a counterclaim for damages alleged to have been sustained by the defendant on account of the plaintiff's breach of the contract to deliver the fertilizer during the month of March, by reason of

which he was denied the intended purpose, known to the plaintiff, of applying the fertilizer at the time of planting his crop, which resulted in a serious loss of production. In order to establish this, the only element of damage to which the evidence offered by the defendant pertained, the defendant offered the testimony hereinbefore referred to.

I think that the testimony would have been admissible, if the defendant had properly laid the foundation for it by evidence of other facts essentially necessary, as I shall endeavor to show, to his claim for special damages of this particular nature.

If a buyer purchases goods for delivery at a particular time, for a particular use and not for resale, and the seller has knowledge of such facts, it will be presumed that the parties contracted with reference to those facts, and the special damage which may result to the buyer from the seller's nondelivery, or partial delivery, or delayed delivery, may, under certain circumstances, constitute a proper element of damages.

I assume the facts in this case to be that the defendant bought the fertilizer to be delivered in March; that he intended to use it on his farm by applying it at he time he planted his crops; that the plaintiff knew of and contracted with reference to this purpose; that the fertilizer was not delivered until June; and that the failure to apply the fertilizer at the time of planting resulted in a serious loss of production.

The seller is not responsible to the buyer in damages for this loss of production, unless it can reasonably be inferred that it was a consequence of his breach of the contract, which might or should have been anticipated.

The general rule for the measure of damages resulting from the breach of a contract of sale is the difference between the market value at the time and place of delivery and the contract price. Ordinarily, this risk is what the seller assumes, and which he is charged with having reason-

ably anticipated.    If the buyer should regard this measure
as inadequate, and it must be admitted that many instances
occur where it would be, and seeks to apply a measure more
favorable to himself by resorting to proof of special dam-
ages, he must bring himself within the rules which entitle
him to special damages; the burden is upon him, the pre-
sumption being that the general rule as stated applies.

Assuming, hypothetically, the position of the seller and
contemplating the results which would naturally flow from
his breach of this contract, results which he should reason-
ably have anticipated and with which only he is chargeable,
I think that they might be thus summarized: I have agreed
to deliver the fertilizer to Muldrow in March; I know that
he is a farmer and is going to use the fertilizer in making a
crop; I know that he intends to apply it at planting time;
I know that if he does not do that a serious loss in produc-
tion will result; if I do not deliver at the stipulated time,
the price of fertilizer may be higher than he has agreed to
pay me, and that I will have to make up the difference; but
there is an open market for fertilizers, and there is no rea-
son that I know of why, if I fail, he may not purchase else-
where; there is every reason to suppose that, as a serious
loss of production will result if he does not apply the fer-
tilizer at planting time, he will not take that loss and will
purchase elsewhere.

The evidence does not show that Muldrow ever com-
plained to plaintiff of the delayed delivery, or that he was in
any  way induced by the statements or promises of the plain-
tiff to refrain from buying elsewhere; his failure to do so
appears from the statement in the case to have been plainly
his own voluntary act; "expecting the fertilizer to be de-
livered upon this order and relying upon such promise of
delivery, he failed to order sufficient other fertilizer until
too late to procure delivery of such fertilizer elsewhere."
It appears from this that he did order some fertilizer else-
where, but failed to order enough.   Should the plaintiff be

charged with anticipating the fact that the defendant would fail to do what he had the right to expect him to do, and which the law required him to do, in order that the damage might be minimized?

The defendant's right to recover the special damages claimed depended absolutely upon his inability to purchase fertilizer elsewhere, or upon his prejudicial delay having been induced by the statements or promises of the plaintiff, of which there is not a particle of evidence. On the contrary, his statement quoted above shows that if. he had moved earlier, or had bought a sufficient amount when he did buy, his loss would not have occurred.

The appellant quotes from 2 Sutherland, 2339:

"If a vendor in guano knows that the buyer has ordered it for use as a fertilizer, and fails to deliver a portion of the quantity ordered, and the latter is unable to procure it elsewhere, the seller is liable," etc.

That is the heart of the controversy. I think that this question is absolutely concluded by *Gadsden v. Fertilizer Co.,* 89 S. C. 483, 72 S. E. 15. That was an action for damages for breach of a contract.

"In substance, the complaint alleges: That on January 15, 1910, defendant sold plaintiff five tons of fertilizer at the price of $144.60; that plaintiff paid $68.69, part of the agreed price, and defendant agreed to deliver the fertilizer at Claremont, but failed, after demand, to do so; that, relying upon the defendant's performance of the contract, plaintiff prepared his land and made the other arrangements necessary to plant his crops of corn and cotton; but, by reason of defendant's breach of the contract, he was delayed in planting, and compelled to plant his crops without fertilization, to his damage $250."

The defendant made default and the plaintiff undertook to prove his case to a jury, as the statute requires. He testified that he planted a crop; that he did not make more

than half as much as he would have made if the defendant had furnished the fertilizer according to contract; that his damages amounted to $250; and that he paid $68.69 on the account. The Circuit Judge directed a verdict for the plaintiff for $318.69. The defendant appealed from the judgment by default, and this Court declared:

"The complaint in this case fails to state the facts necessary to entitle plaintiff to recover the special damages which were awarded by the verdict. In an action to recover damages for breach of contract, when the damages sought to be recovered are special, it is necessary to allege and prove that defendant had notice, at the time of making the contract, of the special circumstances from which such damages might reasonably be expected to result. *Towles v. R. Co.,* 83 S. C. 501, 65 S. E. 638. The complaint in this case contains no allegation, nor is there any evidence that defendant knew, when the contract was made, of the special use which plaintiff intended to make of the fertilizer, or of any scarcity of fertilizer which would prevent plaintiff from buying what he needed from other dealers, if defendant failed to furnish it. *Matheson v. Railway,* 79 S. C. 157, 60 S. E. 437.

In the case last cited the Court held:

"There is no foundation for special damages. The evidence discloses nothing more than an ordinary shipment of fertilizer, with no notice to the carrier at the time it received the goods of any special use to which it was to be applied, or of such scarcity of fertilizer as to prevent the purchase of two tons of other guano by the plaintiff."

In both of those cases stress is laid upon the fact of absence of notice of the use to which the fertilizer was to be applied, but, as I understand the decisions, they are based upon that as one of the essential elements; the other equally so being that it was a part of the plaintiff's case to show that he could not have supplied himself in open market with goods which the seller contracted to deliver. *Wilson*

*v. Scarboro,* 169 N. C. 654, 86 S. E. 611; *Standard v. Weeks,* 6 Ala. App. 161, 60 South. 508; *Banks v. Warner,* 85 Conn. 613, 84 Atl. 325; *Martin v. Bunker,* 167 Mo. App. 381, 151, S. W. 984; *Smith v. Curry,* 148 Ky. 166, 146 S. W. 434.

In 24 R. C. L. 77, the following is a quotation from the case of Bell v. Reynolds, 78 Ala. 511, 56 Am. Rep. 52, strongly relied upon by the appellant:

"Thus in an action for breach of a contract for the sale of guano, which the seller knew was intended for use by the buyer in raising a crop on his plantation, only one-half of the stipulated quantity being delivered, and it being then too late to procure it elsewhere, the measure of damages to the buyer was held to be the difference in value between the crop raised on the land on which the guano was used and that raised on the adjoining land of the same quality and cultivated in the same manner on which the guano was used."

At page 85 of the same volume (24 R. C. L.,) referring to the duty of minimizing damages, is the following:

"The general rule that a party injured by breach of contract is bound to protect himself, if he can do so with reasonable exertion, or at trifling expense, and cannot recover from the delinquent party damages which he could with reasonable effort have avoided, is applicable in actions by the buyer for the seller's breach with respect to delivery, and this may require that the buyer supply himself by purchases in the general market with the subject-matter of the sale. For example, a party contracts for a quantity of bricks to build a house, to be delivered at a given time, and engages masons and carpenters to go on with the work. The bricks are not delivered. If other bricks, of an equal quality, and for the stipulated price, can be at once purchased on the spot, it would be unreasonable, by neglecting to make the purchase, to claim and receive of the delinquent party damages for the workmen and the amount of rent

which might be obtained for the house, if it had been built. And though the same kind of article cannot be obtained in the market, if a reasonable substitute may be obtained, it is the duty of the buyer to do so and thus minimize his special damages."

A fairer, more just rule I cannot imagine. Take this as an illustrative case: A cotton mill contracts for cotton with which to operate its mill; it is deliverable at a certain time; the seller knows that if the mill cannot get cotton it cannot run; he is notified by the mill that unless the cotton be delivered on time the mill will shut down; he contracts with reference to that notice; he fails in delivering and the mill shuts down for 30 days and loses heavily; it appears, however, that the cotton market was flush and that the mill could have gotten immediately upon his default all the cotton needed. Would it be just to countenance the breach of the mill's duty to minimize, annihilate, the damages by going upon the market and procuring the necessary cotton?

I therefore conclude that the defendant utterly failed to lay the foundation for proof of special damages, and that the proffered testimony was properly rejected.

The second question: I do not think that there is the slightest ground for the collection of interest upon the open account sued upon. The demand had not been liquidated, there was no formal account stated, and, if the effort be made to construe it as an account rendered and technically an account stated, this theory would be exploded by the admission upon the trial that the defendant was entitled to a credit upon the account sued on. *Wakefield v. Spoon,* 100 S. C. 100, 84 S. E. 418, appears to me conclusive of the question.

The opinion declares that the question of the allowance of interest was not raised in the trial Court, and cannot therefore be considered by this Court. I do not agree to this proposition. The plaintiff moved for a directed verdict; the defendant resisted the motion; the Circuit Judge directed a

verdict for the amount of the account with interest. It must be assumed that the plaintiff moved for what he was allowed, and that the defendant, in resisting the motion, resisted all that was in the motion. I do not understand that the case must show that the appellant objected, either in statement or argument, to the conclusion of the Circuit Judge, but think that he may appeal from it and reverse it, if he can, in whole or in part.

My conclusion, after a most careful consideration of this appeal, is that the judgment below should be modified by striking out the item of interest, $227.02, and allowing the plaintiff to enter up judgment against the defendant for $380.05, with interest at 7 per cent. from the date of the verdict. The defendant, having thus gained a substantial benefit by his appeal, would be entitled to the costs and disbursements of appeal.