17041

LEONARD AMERSON, Respondent, v. F. C. X. COOPERATIVE
SERVICE, INC., Appellant
(88 S. E. (2d) 605)

*Messrs. Nash & Wilson,* of Sumter, *for Appellant,*

*Messrs. Robert O. Purdy* and *Morris D. Mazursky,* of Sumter, *for Respondent,*

July 26, 1955.

BAKER, Chief Justice.

This action was commenced to recover damages alleged to have resulted from the alleged breach of a contract between the respondent, a farmer, and the appellant, a farm machinery dealer, for the repair of a farm tractor. It is alleged in the complaint that respondent notified appellant at the time of making the contract that the use of the tractor was necessary for the preservation and cultivation of 113 acres of cotton then in the course of cultivation by respondent; that the appellant undertook to repair and return the tractor in one week (amended prior to trial to one day) without any examination to ascertain the repairs needed; that the appellant breached its contract in not repairing and returning the tractor promptly; that appellant loaned another tractor to respondent to be used in the interim, which it warranted to be in excellent working condition, but that the substitute tractor would not perform the necessary work of cultivating the crop; that respondent was forced to make the effort of cultivating the crop with two mules, and that by reason thereof the crop yielded only approximately one-fourth of the amount of cotton that would otherwise have

been produced had respondent had the use of his tractor in good repair, which was not returned to respondent until approximately two months after delivery to appellant, and, when returned, it was improperly repaired, to respondent's damage. Appellant denied breach of the contract and filed a counterclaim against respondent for damages to the appellant's tractor loaned to respondent for use in cultivating his crop.

The case was tried before a jury, and resulted in a verdict for respondent in the amount of $4,000.00. Appellant made seasonable motions for nonsuit and directed verdict, for judgment notwithstanding the verdict, and for new trial, all of which were overruled.

Appellant's exceptions raise all of these issues, the solution of which depends upon the admissibility of the testimony on behalf of respondent as to his damages, to all of which seasonable objection was made by the attorneys for appellant on the ground that the evidence was speculative, remote and conjectural.

There was adequate testimony on the part of the respondent of notice to the appellant of the necessity for the immediate repair and return of the tractor for the cultivation of his crops, and that damages would ensue in the event there was delay in the performance of the contract. While the nature of the damages recoverable for the loss of growing crops and the rule with reference thereto is in some doubt and confusion under the previous decisions of this Court, it is a sound rule, as stated in 46 Am. Jur., 815, Section 687, that "loss of or damage to crops is an element of damages for the breach of contract of sale of agricultural machinery or fertilizer which arises naturally from the breach, or such as may reasonably be supposed to have been in contemplation of the parties at the time the contract was entered into as a probable result of a breach of it."

The failure to promptly repair machinery used in the cultivation of a crop, in accordance with agreement, would, in

the opinion of this Court, entail the same result as the failure to deliver it in accordance with contract of sale. An interesting annotation on the subject will be found in 69 A. L. R. 748.

In the case of *Horres v. Berkeley Chemical Co.,* 57 S. C. 189, 35 S. E. 500, 501, 52 L. R. A. 36, the plaintiff sought damages for destruction, by escape of sulphuric acid gas from the Chemical Company's plant, of growing crops of cucumbers and strawberries. In arriving at the damages plaintiff introduced testimony tending to show rental value of the lands upon which the crops were being grown; cost of manure applied thereto, and the cost of labor; also the net results in the sale and yield of cucumbers and strawberries, respectively, after they had matured, being the crops of persons other than plaintiff during the same year, and also the sale and yield of such crops during previous years, including those of plaintiff. The defendant objected to testimony as to yield and sales because plaintiff's crops were immature growing crops, in which cases the method of ascertaining damages was the rental value of the lands, cost of fertilizers, cost of seeds and cost of labor. The Circuit Judge admitted the testimony, and the Supreme Court, in reversing, held:

" * * * It must always be borne in mind that these crops of the plaintiff, injured or destroyed by the noxious gases escaping from defendant's factory, *were immature or growing crops.* The cucumber plants were only five or six inches high, with no runners and no blooms or fruit; and the strawberries were white with blooms, accompanied by an occasional berry,—thus falling under that class of cases where the description of damages appears, as in the case of *Fuller v. Edings,* 11 Rich. [239], 251, about which the court said: 'Speculative opinions of perspective injuries furnish very unreliable evidence on which to base an estimate, and that must be a strong necessity which drives a court to the adoption of such expedients.' It seems to us that to allow the plaintiff to offer the testimony sought to be intro-

duced, by which the jury might assess the damages done to his property by the defendant, would be very dangerous."

This rule was adhered to in the later case of *Lampley v. Atlantic Coast Line R. Co.,* 63 S. C. 462, 41 S. E. 517, 519, for damage to crops by alleged negligent overflow of plaintiff's lands and crops by water obstructed by the defendant. In that case the judgment below was reversed because of the judge's charge to the effect that the jury might take into consideration what the crop would reasonably have made in determining the value of the crop at the time of the injury. The Supreme Court, citing *Horres v. Berkeley Chemical Co., supra,* said:

" * * * This would be but an indirect mode of allowing speculative damages, and is condemned by the leading authorities, as will be seen by references to the cases cited in appellant's argument in *Horres v. [Berkeley] Chemical Co., supra.* It is, however, competent for the plaintiff to introduce testimony to show the rental value of the land on which the crop destroyed was planted, the costs of the fertilizers used, the cost of the labor, etc., in the preparation of the land, and the cultivation of the crop up to the date of injury, the fair value of the services of the owner of the crops in overlooking and attending to the preparation of the land and the cultivation of the crop, interest on the amount lost until verdict, if not *eo nomine,* then by way of damages."

While neither of the foregoing cases appears to have been overruled, attention should be directed to the case of *Mc-Cown-Clark Co. v. Muldrow,* 116 S. C. 54, 106 S. E. 771, where the rule seems to have been modified. Plaintiff sold and delivered to defendant a quantity of fertilizers for delivery in March. The fertilizers were not delivered until June. Plaintiff sued on the account, and defendant, by answer, alleged failure to deliver in the contract time, and damages caused by the delay. The defendant offered to show the difference between the crops made on adjoining land of similar quality, worked in the same way, and with the same seasons on which the fertilizers were used in March, and

the yield on his land on which the delayed fertilizers were used. This testimony was excluded upon the ground that the measure of damages was the difference between the contract price and the price at the time of delivery specified in the contract. Upon appeal by the defendant the judgment was reversed and a new trial ordered, the Court holding:

" * * * The general rule is beyond question, but it does not apply to this case. It is well settled that when the reason of the rule fails the rule does not apply. One who suffers injury from the violation of his contract must minimize his loss by going into the market and purchasing other goods to supply his needs. When, however, the season has passed and injured party to the contract cannot procure the needed goods, the reason of the rule does not apply, and the rule is not applicable. The allegation is that the defendant could not procure the fertilizer when needed, and he could not minimize his loss. The testimony offered eliminated the uncertainty usual in such cases, and should have been admitted. The exception that raises this question is sustained."

It would seem to follow from the foregoing that one who suffers damages to growing crops from the failure of another to comply with the contract, having direct relationship to the production of such crops, is entitled to show, as testimony of his damages, the difference between the crops made on adjoining lands of similar quality, worked in the same way, and with the same seasons as that of the person claiming damages, and if the testimony be sufficiently definite as to the loss, damages are recoverable.

The serious question in this case is as to whether the respondent's testimony meets the foregoing test. The pertinent testimony is set forth below:

"By Mr. Mazursky: Q. Mr. Amerson, I believe you stated you planted about 115 acres of cotton in 1952? A. Yes, sir.

"Q. And I believe you stated that you actually produced 33 bales? A. That's right.

"Q. Now Mr. Amerson, what would reasonably have been produced on your farm in 1952 in cotton, except for the lack of having your tractor?

"Mr. Nash: We would like to get our objection in the record, Your Honor. We think it is speculative, opinion evidence, there is no basis for him to arrive at that shown, no evidence in the record on which he could base such opinion evidence.

"The Court: What was the question again?

"Mr. Mazursky: What he would have made on this land if he had had his tractor, that is the substance of the question.

"The Court: Go ahead and answer it.

"A. I figure that I should have made 95 to 100 bales, with proper cultivation and poisoning.

"By Mr. Mazursky: Q. You stated you produced 33 bales, what size bales were they? A. They averaged 395 pounds.

"Q. And you just stated you anticipated a production of 95 to a hundred—

"Mr. Nash: We object, leading question. Also on the same ground that the opinion of the witness is merely guess work, as to what he might have possibly, could have made or would have made on which there is no basis to arrive at such an opinion as is offered in evidence.

"The Court: Don't lead him.

"Mr. Nash: We think it is speculative, if Your Honor pleases, as to what he might have made.

"The Court: Just put it in the proper form insofar as leading is concerned and go ahead.

"By Mr. Mazursky: I was just reiterating the question to lead to the next one, you stated the 33 bales averaged about 395 pounds a bale? A. Yes, sir.

"Q. What would reasonably have been the average size that you could expect in a 95 to 100 bales, except for the lack of your tractor?

"Mr. Nash: Same objection.

"The Court: I don't follow you as to your question.

"Mr. Nash: He wants him to say 500 weight bales, if Your Honor pleases.

"The Court: I just didn't understand the question, I can't rule on it until I do.

"Mr. Mazursky: He testified he reasonably anticipated on 115 acres 95 to 100 bales of cotton. He testified that the 33 bales that he produced averaged about 395 pounds per bale. Following up the same question and enlarging on it, as to what he reasonably would have produced, I asked him what would be the reasonably anticipated size of the 95 to 100 bales, except for the lack of the tractor.

"The Court: Very good sir, go ahead and answer it. A. I say it should run around 450 to 500 pounds.

\* \* \*

"Q. What would have been the fair market value at the time you sold your cotton of 95 to 100 bales? A. Well, it depended on the grade of it, I would say it would range from, at the time I put most of it in the loan, from twenty-eight to thirty-three cents, along in there.

"Q. What would you have reasonably anticipated receiving for 95 to 100 bales at the time you harvested the cotton? A. Well, if my crop hadn't been in the shape it was in, I could have got it out early, it would have brought thirty-eight to forty cents.

\* \* \*

"Q. At the time you harvested your crop what was the reasonable market price of cotton at that time per pound? A. Well at the time I harvested it ranged from 28 to 34 cents, I would say, in that range, but it was much higher than that in the early part of the season.

"The Court: He didn't ask you that.

"By Mr. Mazursky: Q. You say 28 to 34 cents? A. Yes, sir.

"Q. Mr. Amerson, you say you anticipated producing 95 to 100 bales, what would be your anticipated cost of the gathering of that crop. A. Around $4,000.00.

"Mr. Nash: Subject to our objection, if Your Honor pleases. It is agreed that all of this line of questioning is subject to the objection heretofore made which will run throughout this line of testimony.

"By Mr. Mazursky: Q. What was the cost of your fertilizer in 1952? A. Around $1,500.00.

"Q. What was the cost of the poison that you used? A. Well, I didn't use so much of the poison.

"The Court: Well, did you use any, if you did, how much was it that you used? A. Well, I reckon probably $75.00 worth.

\* \* \*

"Q. Mr. Amerson, were you planting, living at this same place in 1951? A. Yes, sir.

"Q. How many acres of cotton did you plant in 1951? A. 48 acres, approximately.

"Q. How many bales of cotton did you make in 1951 on that 48 acres? A. 44 bales.

\* \* \*

"Q. Walter, under normal cultivation with a tractor on the farm Mr. Amerson was operating, based on your experience as a farmer, what could he have normally expected from that cotton crop of 115 acres? A. Anywhere from 85 to 100 bales.

\* \* \*

"Q. Well, you knew Mr. Amerson's land and you knew the condition you said it wasn't properly cultivated, if properly cultivated what would be the reasonable crop in bales he could expect from that except for the lack of that tractor?

"Mr. Nash: Same objection, if Your Honor pleases, on the same grounds.

"The Court: Yes, sir, go ahead.

"A. Well, I would figure 85 to 90 bales would be reasonable."

A careful consideration of this testimony shows that it does not meet the test laid down in *McCown-Clark Co. v. Muldrow, supra.* It nowhere appears what

cotton crops were produced on adjoining lands of similar quality; worked in the same manner in which respondent would have been able to work his crops had his tractor been properly repaired, and upon which the season was the same. What the foregoing testimony really amounts to is an expression of the opinions of the respondent and some of his neighbors and relatives as to what, in their opinion, would have been produced, both as to the quantity, quality and size of bales, had the respondent had the use of his tractor for the cultivation of said cotton. Speculative opinions in regard to prospective damages is very unreliable testimony upon which to base estimates of such damages, and, as stated in *Horres v. Berkeley Chemical Co., supra,* there must be a strong necessity which drives to the adoption of such expedients.

We have given this matter most serious consideration, and we think that it would open the door to damages of a highly speculative character to conclude that the respondent was entitled to recover upon the testimony that was offered on his behalf as to his damages in this case.

The fundamental error in this case lies in the admission of incompetent testimony. With this testimony in, a nonsuit or directed verdict was improper, but the motion for a new trial should have been granted. *Gill v. Ruggles,* 97 S. C. 278, 81 S. E. 519; *Townes v. City Council of Augusta,* 46 S. C. 15, 23 S. E. 984; *State v. Phillips,* 134 S. C. 226, 132 S. E. 610.

The judgment is reversed and the case is remanded for a new trial.

STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.