## 18261

W. R. GRACE & COMPANY (DAVISON C H E M I C A L COMPANY DIVISION), Appellant, v. Harold LaMUNION, Rush B. LaMunion, and William LaMunion, d/b/a LaMunion Brothers, and Harold LaMunion, Grace L. LaMunion, Rush B. LaMunion, Lillian LaMunion, William LaMunion and Sadie E. LaMunion, Respondents.

(138 S. E. (2d) 337)

2

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Appellant,*

*Messrs. Paul N. Uricchio, Jr.,* and *Robert M. Hollings,* of Charleston, *for Respondents,*

4

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Appellant,*

October 6, 1964.

BRAILSFORD, Justice.

This is an action on a note given to plaintiff-appellant, W. R. Grace & Company, by the defendants-respondents, the LaMunion Brothers, for the price of fertilizer. The LaMunions counterclaimed for breach of an alleged express warranty that the fertilizer contained a pesticide which would effectively protect their fall, 1958, cucumber crop from nematodes. The jury found a verdict for the LaMunions for $28,000.00 on the counterclaim and Grace has appealed. The exceptions challenged certain rulings of the court in passing upon and refusing Grace's post trial, alternative motions for judgment notwithstanding the verdict or for a new trial. They do not assign as error, either the court's refusal of the motion for judgment notwithstanding the verdict, or the refusal of the motion for a directed verdict which was duly made at the trial. Therefore, Grace's claim that there was insufficient evidence to support a verdict for the LaMunions is not properly before us, and we are only concerned with whether there was any such error as assigned in the admission of evidence or in the instructions to the jury as to require reversal of the judgment appealed from and a new trial. .

Nematodes are plant parasites which feed upon the roots of many varieties of vegetation. They multiply rapidly and, if they are not effectively controlled, cause serious crop losses. They are prevalent on Edisto Island, where defendants' crop was planted, and cucumbers are susceptible to their ravages. The pests build up during the warm weather and there is greater need for control for fall crops than for those planted in the spring. Until rather recently, there were no adequate means available for controlling nematodes, and it was impractical to plant cucumbers for fall harvest on Edisto Island. However, for several years prior to 1958, the LaMunions and other farmers successfully protected their spring and fall cucumbers from nematode infestation by means of a soil fumigant, applied and sealed into the beds with special equipment.

The LaMunions offered evidence to support the allegation of the counterclaim that the fertilizer was sold to them on the express warranty that it contained an ingredient which would prevent nematode infestation when applied to a crop as directed, and to support the allegation that this warranty was breached. Several of the LaMunions' witnesses, including the Charleston County Agricultural Agent, testified that the LaMunions' crop, to which the fertilizer was applied, was so heavily infested with nematodes as to sap its vitality and seriously impair its yield of cucumbers.

On the other hand, Grace's representatives denied having warranted that the material sold to the LaMunions would control nematodes, and Grace offered an expert witness who testified that there was no significant nematode infestation of the crop in question, except on a comparatively small acreage.

These conflicts in the testimony raised jury issues, and there can be no serious question of the sufficiency of the evidence to sustain the implied findings of that body that the fertilizer was sold upon an express warranty; that the warranty was breached, and that there was a consequent impairment in the yield of the LaMunions' crop.

Grace assails the judgment upon three grounds: (1) That the court admitted incompetent evidence on the issue of the extent of defendants' loss of yield; (2) That there was no evidence that any impairment of yield resulted in monetary loss to claimants; (3) That the court erred in its instructions to the jury on the measure of damages.

The foregoing statement of plaintiff's contentions has been formulated from the three questions under which the exceptions have been grouped and argued in its brief.

The infested crop was brought to maturity, harvested, packed and marketed. As the first step in proving damages, it was necessary for the LaMunions to offer evidence tending to establish the extent to which their cucumber production was reduced by the nematode infestation. That is, how many more bushels would probably have been produced if there had been no significant nematode infestation? The infested crop produced an average yield of 150 bushels per acre. As evidence tending to establish the probable yield had there been no breach of warranty, the LaMunions offered testimony as to the number of bushels produced on the same land in the fall of 1957. Grace objected to this testimony, contending that, under the decision of this court in *Amerson v. F. C. X. Cooperative Service*, 227 S. C. 520, 88 S. E. (2d) 605, the only competent evidence of loss of yield resulting from damage to a crop is that which shows, quoting from the opinion, "the difference between the crops made on adjoining lands of similar quality, worked in the same way, and with the same seasons as that of the person claiming damages, * * *" 227 S. C. 525, 88 S. E. (2d) 608. The court sustained this objection, ruling, in effect, that the extent of loss from the nematode infestation could be shown only by comparison of the yield of the infested crop with that of other comparable plantings of cucumbers during the same season. No appeal was taken from this ruling.

Only two other farmers in the area produced cucumbers for fall harvest in 1958, one Towles, whose cucumber field

was adjacent to one of the LaMunion fields, and one Simmons, whose planting was from 1½ miles to 5 miles away "as the crow flies," according to the estimates of various witnesses.

The LaMunions undertook to prove the yield of cucumbers per acre on the Towles farm by the testimony of expert witnesses, who, according to some of the testimony, observed the crop before and after maturity and during harvest. These witnesses testified that, in their opinion, about 400 bushels of cucumbers per acre were harvested from this field. Grace objected to this testimony upon the ground that it was speculative and conjectural, and that the best evidence would be to call Towles as a witness to what the actual production was. The adverse ruling of the circuit judge is assigned as error, and the *Amerson case supra,* is relied upon as requiring the exclusion of the testimony. We do not think that Amerson is in point. In that action for damages for breach of a contract to repair a tractor, as a result of which plaintiff was deprived of the means of properly cultivated his cotton crop, it was held that the circuit court erred in admitting the testimony of plaintiff and his neighbors as to what, in their opinion plaintiff's cotton crop would have produced if he had had the use of his tractor for its cultivation. The opinion which they were allowed to express, erroneously, according to the decision, was as to the probable yield of the crop in question had it been properly cultivated. Here, the testimony of the expert witnesses was as to the actual yield of a crop which was brought to maturity and harvested under their observation. We are satisfied that, under these circumstances, the opinions of these witnesses had probative value and were properly admitted in evidence.[1]

We add that there is no suggestion in the record that the estimate of these witnesses that the Towles field produced

---

[1] It is of interest that the highly regarded annual 5 acre cotton contests, which have been conducted in this state for many years under the auspices of Clemson University, are judged on estimated yields made by teams of experts.

400 bushels of marketable cucumbers per acre was at material variance with its actual production, although, according to Grace's contention, actual production figures were readily available.

The exclusionary rule, known as the "best evidence rule," in the law of evidence applies only to oral testimony tending to vary the terms of a written instrument, and lends no strength to the contention that the expert estimates of the crop yield were incompetent.

Grace, also complains of error in the admission of marketing records which showed production of 392 bushels of cucumbers per acre on the Simmons farm. The sole ground of objection to this evidence at the trial [2] was that the two crops were not planted on adjoining lands, "within the test laid down in the *Amerson case*"; therefore the yield on the Simmons farm was irrelevant to the issue of the probable LaMunion crop yield, had the latter not been infested with nematodes. Additional objections to the competency of these reccords, i. e., failure to show required similarities between the Simmons and LaMunion crops in other respects, were urged in support of Grace's motion for a nonsuit and are included in the exceptions on this appeal. However, no motion to strike the evidence on these grounds was made or passed upon in the trial court and the only question before us is whether the objection interposed when the records were introduced was properly overruled.

It is true that the excerpt [3] from the Amerson opinion, on which Grace relies as establishing a rule restricting the admissibility of evidence in proof of loss of crop yield, refers to the propriety of making a comparison between the yield of the damaged crop and that "made on *adjoining* lands of similar quality, worked in the same way * * *."

[2] The objection was first made during the examination of Simmons and was repeated by reference when the records of the packer were offered and received in evidence.

[3] Quoted, ante, page . . . . . . .

This excerpt from Amerson was lifted bodily from ■ *McCown-Clarke Co. v. Muldrow* 116 S. C. 54, 106 S. E. 771, where it was a part of the court's recital of the facts and proceedings at the trial. The competency of evidence to prove loss of crop production was not in issue in Muldrow. Instead the question was whether damages resulting from loss of yield were recoverable in an action for the breach of a contract to sell and deliver fertilizer, or whether damages were limited to the difference between contract price and price at time specified for delivery. Especially in view of this background, we are satisfied that the court in Amerson did not intend to lay down the requirement that a crop must be planted on adjoining land before its yield may be proved and compared with the yield of the crop in question. The question always is whether such similarity has been established between the crops sought to be compared that proof of the yield of the undamaged crop has a logical tendency, in the light of all of the evidence, to indicate the probable yield of the other, had it not sustained the injury complained of. We find no error in overruling the objection interposed to this evidence.

Five exceptions are argued under the contention that ■ there was no evidence that the LaMunions sustained a monetary loss as the result of any loss of yield shown by the evidence. The first two of these exceptions are based upon what we regard as the misconception that the counterclaim is for lost profits. Quoting from the brief, "The counterclaiming Defendants have not introduced any testimony or evidence from which it can be inferred that, except for the intervention of the alleged wrongful act, profits would have accrued to them." Hence, it is argued, the evidence does not establish a monetary loss and there can be no recovery of damages.

The fallacy is that the LaMunions incurred all expense necessary to bring their crop to maturity, and this expense was exactly the same as though there had been no nematode infestation. Therefore, the cost of bringing the crop to ma-

turity, which would be a key factor in determining whether the LaMunions made a profit on their fall cucumber operation, would have no bearing on whether they sustained a monetary loss from the reduction in yield. The destruction or loss of a mature crop, which has a realizable value in excess of the cost of harvesting, processing and marketing, results in a monetary loss to the owner, regardless of whether the farming operation would, otherwise, have been profitable. Therefore, these exceptions are without merit.

The next exception under this heading rests in essential part on the proposition that the LaMunions failed to prove that any cucumbers, in addition to those harvested, could have been sold. While there is no direct testimony on the point, the inference is clear that there was a market for cucumbers until after Edisto Island crop had been harvested. Sales records in evidence show that the LaMunions made their last shipment on October 11, 1958, and that the market was steady through the date on which these cucumbers were sold. The last Simmons shipment for the season was also packed on October 11, which raises the clear inference that had the LaMunions made a full crop, the pickings during the harvest would have yielded more cucumbers, but the completion of the harvest would not have been delayed. Hence, any additional cucumbers could have been sold on the same market as those actually harvested and marketed.

Two more exceptions are grouped under this heading. They are to some extent repetitious, and the only new point raised will be sufficiently dealt with in our disposition of appellant's final attack on the judgment, to which we now turn.

At the conclusion of the court's instructions to the jury, counsel for Grace took exception to the charge on the measure of damages. Error in this respect was made a ground of the motion for a new trial. In overruling this motion, the trial judge conceded that the following excerpt from the charge, which Grace assigns as error here,

was improper, but held that the error was cured by other instructions.

"I charge you, with reference to the measure of damages for one who suffers damages to growing crops and the failure of another to comply with the contract having direct relationship to the production of said crops, that person is entitled to a measure of damages and is the difference between the crops made upon adjoining lands of similar quality, worked in the same way and with the same season as that of the person claiming damages."

The foregoing quotation from the charge is an inaccurate paraphrase of a portion of the opinion in Amerson, which deals with evidence tending to establish damages rather than with the measure of damages in such cases.

The instruction was misleading and prejudicial to Grace because it failed to take into account the substantial expense which would have been involved in harvesting any additional cucumbers and processing them for market. No evidence was introduced as to the value of cucumbers before harvest. The only evidence on the point was as to market value after harvesting and processing. The natural inference for the jury to draw from the instruction was that it should ascertain the difference in bushels and simply multiply the number so ascertained by the average market price per bushel. The likelihood of misleading the jury was heightened by the absence of any evidence as to the expense involved in picking and readying cucumbers for market. An exhibit which was excluded from evidence but marked for identification and included among the exhibits filed with us shows that these expenses amounted to approximately one-third of the average market price per bushel.

The true measure of damages in a case of this kind is aptly stated in 25 C. J. S., § 85, page 613, as follows:

"Continuing injuries. Where a crop is injured, from time to time throughout its growing season until its maturity,

but is not destroyed, so that it is cultivated throughout the season, harvested and marketed, the damage may be measured by the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury."

See also 15 Am. Jur., pages 261, 262, and Annotation 175 A. L. R. 159, 193 et seq.

When the LaMunions relied upon evidence as to market value, instead of undertaking to prove a value for a mature crop of cucumbers in the field, the burden rested upon them to establish the expense which would have been involved if additional cucumbers had been produced and marketed. In the absence of such evidence, there was no way for the jury to ascertain the extent of their loss arising from the breach of warranty. We think that the court erred in holding that these expenses were matters in mitigation which should have been proved by Grace.

We have scrutinized the charge with care and failed to find any instruction which correctly states the measure of damages or tends to remove the prejudice implicit in the instruction to which exception is taken.

Reversed and remanded for a new trial.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.