22035

Harold Heath HILL, Plaintiff, v. BASF WYANDOTTE CORPORATION, Defendant.

(311 S. E. (2d) 734)

*Dudley H. Britt, Terry A. Finger* and *William P. Donelan, Jr.,* Columbia, and *Philip T. Lacy,* Richmond, Va., *for plaintiff.*

*Charles E. Carpenter, Jr.,* and *R. Davis Howser, Richardson, Plowden, Grier & Howser,* Columbia, *for defendant.*

Jan. 20, 1984.

LITTLEJOHN, Justice:

This case comes before us as a certified question from the United States District Court, District of South Carolina, pursuant to Supreme Court Rule 46.

The question presented is as follows:

> Given the distinction between (1) actual or direct and (2) consequential damages as set forth in §§ 36-2-714 and 36-2-715 of the South Carolina Code of Laws, 1976, as amended, what is the measure of actual damages in a herbicide failure case where there is a valid limitation of consequential, special or indirect damages?

This is a breach of warranty case involving an alleged herbicide failure which caused crop damage.

Plaintiff Hill (Farmer) purchased a quantity of the herbicide, Basalin, from a retail distributor. Basalin is manufactured by defendant BASF Wyandotte Corporation (BWC).

Among other things, to each can of Basalin there were attached the following statements:

1) "BWC" warrants that this product conforms to the chemical description on the label and is reasonably fit

for the purpose referred to in the Directions for Use subject to the inherent risks referred to above.

2) In no case shall "BWC" or the Seller be liable for consequential, special or indirect damages resulting from the use or handling of this product, and

3) Read "CONDITIONS OF SALE AND WARRANTY" before buying or using. If terms are not acceptable, return product at once, unopened.

Farmer alleges that he used Basalin on approximately 1,450 acres of soybeans and another herbicide, Treflan, on approximately 200 acres. He further alleges that although there was a severe drought that year, the Treflan treated crops were significantly better than the Basalin crops both in quality and yield per acre.

Farmer initially brought suit in United States District Court on oral and written warranties for damages. A jury awarded him $207,725.00. BWC appealed and the Fourth Circuit Court of Appeals reversed and remanded the case, holding that only the written warranties on the labels of the product apply and that the limitation of remedies quoted above is valid. *Hill v. BASF Wyandotte Corp.*, 696 F. (2d) 287 (4th Cir. 1982).

In footnote 6 the court stated:

We express no opinion as to whether under subsections (1) and (2) of § 36-2-714 and on the evidence that may be adduced on retrial the appropriate measure of damages would be the purchase price of the herbicide or some other measure.

This question was certified to us by the trial court after remand.

Ordinarily, *S. C. Code Ann.* § 36-2-714(2) (1976) is controlling as the measure of damages in a breach of warranty case. This section provides:

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, *unless special circumstances show proximate damages of a different amount.* (Emphasis added.)

We find that the formula in this subsection is inapplicable to a herbicide failure case. This formula is most appropriate where the nonconforming goods can be repaired or replaced and value (both as warranted and as accepted) can be defined with certainty.

A herbicide failure is a latent defect in the product. There is no reasonable way a farmer can determine in advance whether a herbicide will perform as warranted. Discovery of the problem must await the development of the crop at which time it is usually too late to correct.

The value of a herbicide as warranted is difficult to define. Price and value are not equivalents. From the farmer's perspective, the value of the herbicide is a healthy crop at maturity. In the manufacturer's viewpoint, the value is its selling price.

The value as accepted is equally uncertain and difficult to define. There is no market for such goods and thus no market price. If anything, it has a negative value.

In our view, the inability of a court to ascertain with certainty the value of goods both as warranted and as accepted creates a special circumstance within the meaning of § 36-2-714(2). It is this special circumstance which removes cases of this type from the § 36-2-714(2) measure of damages into subsection (1).

Subsection (1) provides:

> (1) Where the buyer has accepted goods and given notification (subsection (3) of § 36-2-607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

Official Comment 2 to § 36-2-714 indicates that subsection (1) is applicable in breach of warranty cases.

It has consistently been held by this Court that the measure of actual damages, in cases similar to this, is the value the crop would have had if the product had conformed to the warranty less the value of the crop actually produced, less the expense of preparing for market the portion of the probable crop prevented from maturing. *See, McCown Clark Co. v. Muldrow,* 116 S. C. 54, 106 S. E. 771 (1929);

*Amerson v. F.C.X. Co-Op Service,* 227 S. C. 520, 88 S. E. (2d) 605 (1955); *W. R. Grace and Co. v. LaMunion,* 245 S. C. 1, 138 S. E. (2d) 337 (1964) and *Simmons v. Ciba-Geigy Corp.,* 279 S. C. 26, 302 S. E. (2d) 17 (1983). *See also, Klein v. Asgrow Seed Co.,* 246 Cal. App. (2d) 87, 54 Cal. Rptr. 609, 620 (1966). We hold this formula to be appropriate in the present case.

BWC has argued that this formula includes lost profits and that lost profits are a consequential damage barred by the limitation of remedies on the cans of Basalin. We disagree.

In *W. R. Grace and Co., supra,* it was noted that the "... destruction or loss of a mature crop, which has a realizable value in excess of the cost of harvesting, processing and marketing, results in a monetary loss to the owner, regardless of whether the farming operation would, otherwise, have been profitable."

If the measure of damages we have adopted includes an element of lost profits, such inclusion is merely coincidental as the measure covers the direct loss resulting in the ordinary course of events from the alleged breach of the warranty. *See,* § 36-2-714(1).

The foregoing is the order of this Court.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.