23035

HALEY NURSERY COMPANY, INC., Appellant-Respondent
v. Jimmy FORREST, Respondent-Appellant.

(381 S. E. (2d) 906)

Supreme Court

*Sherwood M. Cleveland* and *Robert P. Wood,* both of *Rogers, Thomas, Cleveland, Koon, Waters and Tally,* Columbia, *for appellant-respondent.*

*David E. Dukes,* of *Nelson, Mullins, Riley and Scarborough,* Columbia, *for respondent-appellant.*

Heard May 3, 1989.

Decided June 12, 1989.

GREGORY, Chief Justice:

Appellant-respondent Haley commenced this collection action against respondent-appellant Forrest, a South Carolina peach grower, for failure to pay on his account. Forrest counterclaimed for breach of contract, breach of warranty, and violation of the South Carolina Unfair Trade Practices Act (UTPA). Both parties appeal the amount of damages awarded. We affirm.

The facts are as follows. Haley is a commercial nursery that supplies fruit trees to farmers. In order to provide farmers with different varieties of peaches, a commercial nursery grafts buds from a peach tree of the desired variety onto rootstock seedlings. The nursery then labels the seedlings, which are as yet unidentifiable by sight, and ships them to the farmer. Typically, a peach tree will leaf the first year, bloom the second, and fruit the third. The only positive means of identifying the tree is to evaluate the fruit it bears, however, leaves and buds give some early indication of variety. For instance, peach trees have either a "showy" or a "non-showy" bloom and observation of the bloom eliminates some of the possible varieties. Similarly, observing whether the leaf glands are "reniform" (kidney-shaped) or "globose" (round) indicates which of several varieties a tree may or may not be.

The dispute in this case involves four shipments of mislabeled trees. Over a period of several years, Forrest ordered peach trees from Haley. In December 1982, he received from Haley 3,500 trees labeled "Springcrest" as ordered and planted them on thirty-five acres for which he holds a fifteen-year lease and a five-year option to renew. In March 1984, when the trees first bloomed, Forrest realized 2,500 of these trees could not be Springcrest because they did not have showy blooms. When Haley was notified, it immediately sent 2,500 replacement trees labeled "Springcrest." Forrest pushed up the original trees at a cost of $225 per acre, re-established the orchard at a cost of $27,000, and replanted 2,500 trees.

When the replants bloomed one year later, Forrest again realized they could not be Springcrest because they did not have showy blooms. Upon notification, Haley sent an employee to examine the trees who determined they must be "Springbrite" rather than "Springcrest." Haley represented to Forrest that this variety was equivalent to Springcrest and would ripen about the same time. One year later when the trees began to fruit, however, Forrest discovered the peaches were much smaller and more susceptible to bacteriosis than the Springcrest variety.

Two other shipments of mislabeled trees occurred during this same time period. In December 1982, Forrest received 1,000 trees labeled "Rubired" as ordered; in December 1983, he received 1,100 more of the same trees. Forrest planted these trees on land for which he holds a fifteen-year lease. In March 1984, Forrest discovered these trees could not be Rubired because they had showy blooms. Haley sent an employee to examine the trees who concluded they were actually "Windblow," another commercially acceptable variety. When the trees fruited in 1987, however, Forrest discovered they were not Windblow but some unknown variety very susceptible to brown rot.

As a result of these shipments of mislabeled trees, Forrest refused to pay his outstanding bill with Haley and this action ensued. The trial judge directed a verdict for Haley in the collection action and for Forrest for breach of express warranty. The jury returned a verdict of $31,253.00 for Haley, which the trial judge increased to $41,405.35; it

awarded Forrest $350,000 on his counterclaim, which the judge reduced to $250,000, and found Haley violated the UTPA. The judge awarded Forrest $50,000 costs and attorney fees under the UTPA.

## HALEY'S APPEAL

Haley contends the amount of damages awarded Forrest is excessive.

Forrest offered expert testimony that he lost profits of $317,000 for the 5,000 mislabeled Springcrest trees and $240,000 for the 2,100 mislabeled Rubired trees. These figures were adduced by comparing the net revenue of the yield if the trees had been as warranted to the net revenue of the yield from the trees as delivered, calculated over the fifteen-year life span of the trees.

First, Haley contests the validity of the figures upon which Forrest's expert based his calculations. Haley cites *Amerson v. FCX Coop. Service, Inc.*, 227 S. C. 520, 88 S. E. (2d) 605 (1955), for the proposition that the measure of damages for crop loss must be calculated using figures for yields of similar crops on adjoining land. The court modified *Amerson* in a later case holding evidence to prove crop damage is proper if the crops are similar enough to have a "logical tendency" to prove the probable yield of the crop lost. *W. R. Grace & Co. v. LaMunion*, 245 S. C. 1, 138 S. E. (2d) 337 (1964). Forrest's expert, Larry Bower, testified he used price data from the United States Department of Agriculture and the South Carolina Crop Reporting Board. He used cost data from information published by the Agriculture Economics Department of Clemson University. These figures clearly have a logical tendency to prove the probable yield of Forrest's lost peach crop.

Haley further complains the verdict is excessive because Forrest should not be compensated for twelve years of lost revenue, based on the fifteen-year life-span of the trees, when he can replant and minimize his losses. We agree but find the damages award proper. Haley concedes Forrest is entitled to four years of lost profits for the Springcrest trees and eight years of lost profits for the Rubired trees plus the cost of removal and replanting. (See Appendix.) The record indicates the $250,000 remitted ver-

dict is within the range of damages conceded by Haley. *See Manning v. City of Columbia*, 297 S. C. 451, 377 S. E. (2d) 335 (1989) (to determine if damages are excessive, this Court will consider whether amount awarded falls within range of damages testified to below).

Next, Haley contends the trial judge should have granted its motion for directed verdict on the UTPA cause of action. It claims breach of an express warranty cannot constitute an unfair trade practice because it does not affect the public as required under the Act. *See* S. C. Code Ann. § 39-5-10(b) (1985).

An unfair or deceptive trade practice has an impact upon the public interest if it has the potential for repetition. *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S. C. 475, 351 S. E. (2d) 347 (Ct. App. 1986). Here, Haley's warranty that "we exercise the greatest care to keep our varieties true to name" was printed on Haley's invoices to all customers. Haley's price catalogue included language "pledg[ing] that all stock is true to name." Evidence at trial indicated Haley in fact did nothing to verify its bud source. Haley's breach of warranty impacts on the public interest because of the potential for repetition by publication of these misrepresentations to other consumers. We hold the trial judge properly denied the motion for directed verdict.

Finally, Haley contests the award of attorney fees. S. C. Code Ann. § 39-5-140(a) (1985) provides for an award of reasonable attorney fees and costs upon a finding of a violation of the UTPA. Haley contends, however, the award of $50,000 attorney fees was unreasonable because counsel did not spend the time billed solely on pursuing the UTPA action but also on defending the collection action.

Counsel submitted affidavits supporting attorney fees of $115,000 and costs of $6,249. The trial judge awarded less than half this requested amount, reflecting a reduction for time allotted to defense of the collection action. We find the record supports the award of $50,000 attorney fees.

Haley's remaining exceptions are disposed of pursuant to Supreme Court Rule 23. *See Hill v. BASF Wyandotte Corp.*, 280 S. C. 174, 311 S. E. (2d) 734 (1984) (limitation of remedy).

## FORREST'S APPEAL

Forrest appeals the trial judge's denial of his motion for treble damages. The UTPA provides for treble damages upon a finding of a willful violation of the Act. *See* S. C. Code Ann. § 39-5-140(a) (1985). Willful violation is defined by statute as occurring "when the party committing the violation knew or should have known that his conduct was a violation of [the UTPA]." S. C. Code Ann. § 39-5-140(d) (1985). Forrest complains the trial judge erred in applying the common law definition of willfull in ruling there was no willful violation of the Act. We agree but hold the record supports the trial judge's finding.

The record includes testimony that it is a common practice for a nursery to rely on the supplier's word that the buds supplied are the proper variety and not to inspect the budwood tree itself. Further, Mr. Haley testified there was no time for an independent verification of the budwood source because of short notice demand. He also testified that mislabeling budwood is not the only way for the varieties to be mistakenly mixed.

The statutory definition of willful has been construed by our Court of Appeals to mean: "if, in the exercise of due diligence, a person of ordinary prudence engaged in trade or commerce could have ascertained that his conduct violates the Act, then such conduct is willful." *State v. Nest Egg Society Today, Inc.*, 290 S. C. 124, 348 S. E. (2d) 381 (Ct. App. 1986). In *Nest Egg* the willful conduct was creation of a pyramid scheme which is expressly prohibited by statute. *See* S. C. Code Ann. § 39-5-30 (1985). Here, Haley's conduct is not prohibited and there is evidence it is in accord with the common practice of the trade. Applying the statutory definition, we hold the record supports the trial judge's finding the violation was not willful. *Townes Associates Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976); *Payne v. Holiday Towers, Inc.*, 283 S. C. 210, 321 S. E. (2d) 179 (Ct. App. 1984). (Any evidence standard of review.)

Accordingly, the judgment of the circuit court is

Affirmed.

HARWELL, CHANDLER, FINNEY and TOAL, JJ., concur.