### W. S. WILSON v. S. H. SCARBORO AND WIFE.

(Filed 20 October, 1915.)

**1. Contracts—Breach—Timber—Evidence—Measure of Damages—Lumber—Market Value.**

In an action to recover damages for a breach of contract whereby the plaintiff was prevented from cutting the timber contracted for on the defendant's land, it is competent, upon the issue as to the measure of damages, for the plaintiff to show the market value of lumber in that locality as a basis for showing his loss after deducting the cost of manufacture, etc.

**2. Same—Particular Sales—Corroborative Evidence.**

Where, upon the issue as to the measure of damages arising from a breach of contract in the sale of timber, evidence of the market value of lumber in that locality is relevant and competent, it is permissible to show prices obtained for particular sales of lumber, for such; in the aggregate, show the market value thereof; and evidence of particular sales is especially competent when corroborative of testimony of the market value of the lumber at the time and place.

**3. Appeal and Error—Objections and Exceptions — Evidence — Unanswered Questions—Contracts—Breach—Damages—Diminution.**

Where exception is taken to ruling out questions asked a witness on the trial, it must in some way appear what the answers of the witness sought to be elicited would have been, so that the Supreme Court may see wherein the appellant has been prejudiced; and while in this action to recover on a breach of contract the court recognizes and discusses the rule that the party injured is required to minimize his injury by the exercise of reasonable care, it is held that the appellant has not sufficiently shown by his evidence that he is entitled to its application.

APPEAL by defendant from *Daniels, J.,* at the April Term, 1915, of WAKE.

Civil action. This case was here before and is reported in 163 N. C., 380. We there ordered a new trial for errors committed below, and at the last trial issues only as to the damages were submitted to the jury, the following verdict having been returned:

1. What damages, if any, is the plaintiff entitled to recover of the defendants by reason of being prevented by the defendants from cutting the timber described in the complaint? Answer: "$1,700."

2. What damages, if any, are the defendants entitled to recover of the plaintiff on account of stumps cut too high, logs left by plaintiff upon the ground, and standing trees left standing by plaintiff upon his sawmill location, as alleged in the answer? Answer: "$100."

3. Did the plaintiff negligently cause the burning of defendants' woods, as alleged in the answer? Answer: "Yes."

4. Did the defendants, by their own negligence, contribute to the burning of the defendants' woods, as alleged in the reply? Answer: "No."

4. What damages, if any, are the defendants entitled to recover of the plaintiff on account of such burning? Answer: "$250."

Judgment was entered thereon for the plaintiff and the defendant appealed.

*R. N. Simms, Armistead Jones & Son, W. H. Lyon, Jr., Douglass & Douglass for plaintiff.*

*Jones & Bailey for defendant.*

WALKER, J., after stating the case: There are substantially but two questions presented on this appeal.

First. It was necessary for plaintiff to prove his damages by testimony as to the value of the timber which, by the wrongful conduct of the defendant, he was prevented from cutting on the land, under their contract, and in order to do so, among other pertinent evidence, he offered to show at what price lumber was selling in that market, and was permitted to do so over defendant's objection. We do not see why this was not competent and relevant. It tended to prove the value of the timber, and the certain profit he would have made if the defendant had not violated the contract. The ground of objection to this evidence, as stated in the brief, is that plaintiff should have been restricted to the market price and not allowed to speak of any particular sale or purchase by him at the time. But the market price is generally ascertained by prices received at collective sales in the ordinary course of business, and what was paid for the article in a sale is some evidence of value. It was held in *Small v. Pool,* 30 N. C., 47, that while the price given by the purchaser and that for which he sold the property do not conclusively fix the value or amount of damages for a breach of the contract of sale, "each was competent as *some* evidence of the value of the article sold at the respective times of the purchase and the sale, and as such the jury had a right to have it," citing *Clare v. Maynard,* 32 E. C., 713 (7 Carr. & P., 741), which was an action for damages for breach of warranty in the sale of a horse, the question being as to its value. *Chief Justice Denman* said: "As the warranty and the unsoundness are admitted on the record, the only question is the amount of the damages. The first item claimed is the loss on the value of the horse. I am of opinion that the amount of damages is what the horse would be worth if sound, deducting the price it sold for after the discovery of the unsoundness; and I think the price at which it was sold to the plaintiff is not conclusive as to its value, though I think it very strong evidence." And again: "There is a case of *Cox v. Walker,* now before the Court. It was tried at Kingston, and there a horse-dealer had sold the horse to a livery stable keeper, who sold it to Sir John Johnstone at a higher price. In all the law of the world, I believe this is a new point. My

view of it is, that the fair value of the horse, if sound, is the measure of the damages, and that the sum the plaintiff gave is only the evidence of the value. The case of *Curtis v. Hannay*, 3 Esp., 82, bears on the present." It was also held that plaintiff could not recover ten pounds, which he had lost on a resale at a price equal to that amount over and above the original price, it being merely the loss of a good bargain. Cases in this Court recognizing the same rule as to value are *Boggan v. Horne*, 97 N. C., 268; *McPeters v. Ray*, 85 N. C., 462, and *Perry v. Insurance Co.*, 137 N. C., 403, which cites *Boggan v. Horne, supra;* 1 Elliott on Ev., sec. 182.

The right to recover damages of a prospective nature in cases of this kind, and the limitations upon it, are discussed fully by *Justice Hoke* in *Wilkinson v. Dunbar*, 149 N. C., 20. But this case is more like *McPeters v. Ray, supra,* for here the witness first testified as to the market value before stating at what price he had several times in 1910 bought and sold the same kind of timber and lumber. This was properly admitted as some evidence in confirmation of his opinion as to the market price.

But defendant further urges that the plaintiff should have diminished the loss by the exercise of proper care after he was apprised of the breach by the defendant of the contract, and should have bought other lumber or timber for his purpose. This is a familiar doctrine, but there is some variety in the statement of it. Compensation for a wrong is limited to such consequences as the injured party could not have avoided by reasonable care or diligence. All other consequences are regarded as remote, the rule being the same in cases of contract and those of tort. The injured party's own negligence or willful fault in failing to take reasonable precautions to prevent or reduce the damage, after notice of defendant's wrong, is regarded as the proximate cause of such injuries as could have in this way been avoided.

Courts frequently speak of the duty to make the damages as light as possible, but it is a duty only in the sense that compensation is denied for losses which might have been prevented by careful conduct on his part, and they are, therefore, said to be remote because the will or negligence of the injured party has intervened as a separate and independent cause producing them. Hale on Damages, p. 64 (29), and cases in note 86; *Loker v. Damon*, 17 Pick. (Mass.), 284; *Sutherland v. Wyer*, 67 Me., 64; *Sherman C. T. Co. v. Leonard*, 46 Kansas, 354; *Davis v. Fish*, 1 G. Greene (Iowa), 406; *Thompson v. Shattuck*, 2 Mile (Mass.), 615. The rule has been well considered and illustrated by apt examples in numerous decisions upon the subject, and the result of the cases, as summed up, may be thus stated.

If the party injured has it in his power to take measures by which his loss may be less aggravated, this will be expected of him. Thus, in

a contract of assurance, where the assured may be entitled to recover for a total loss, he, or the master employed by him, becomes the agent of the assurer to save and turn to the best account such of the property assured as can be preserved. The purchaser of perishable goods at auction fails to complete his contract. What shall be done? Shall the auctioneer leave the goods to perish, and throw the whole loss on the purchaser? That would be to aggravate it unreasonably and unnecessarily. It is his duty to sell them a second time, and, if they bring less, he may recover the difference, with commissions and other expenses of resale, from the first purchaser. If the party entitled to the benefit of a contract can protect himself from a loss arising from a breach, at a trifling expense or with reasonable exertions, he fails in social duty if he omits to do so, regardless of the increased amount of damages for which he may intend to hold the other contracting party liable. *Qui non prohibet, cum prohibere possit, jubet.* And he who has it in his power to prevent an injury to his neighbor and does not exercise it is often, in a moral if not in a legal point of view, accountable for it. The law will not permit him to throw a loss resulting from a damage to himself upon another, arising from causes for which the latter may be responsible, but which the party sustaining the damage by common prudence could have prevented. For example, a party contracts for a quantity of bricks to build a house, to be delivered at a given time, and engages masons and carpenters to go on with the work. The bricks are not delivered. If other bricks of an equal quality, and for the stipulated price, can be at once purchased on the spot, it would be unreasonable, by neglecting to make the purchase, to claim and receive of the delinquent party damages for the workmen left unemployed and the amount of rent which might be obtained for the house if it had been built. The party who is not chargeable with a violation of his contract should do the best he can in such cases; and, for any unavoidable loss occasioned by the failure of the other, he is justly entitled to a liberal and complete indemnity. The doctrine, as thus formulated, with the reasons for it, and hypothetical cases showing its practical application, will be found in an able opinion by *Judge Weston* in *Miller v. Mariners' Church,* 7 Me., 51. The injured party is required only to make reasonable and not extraordinary efforts to limit or restrict the resultant damage. We have recognized this principle in several of our cases. *Oldham v. Kerchner,* 79 N. C., 106 (*s. c.,* 81 N. C., 430); *Hassard-Short v. Hardison,* 114 N. C., 482; *Tillinghast v. Cotton Mills,* 143 N. C., 268; *Bowen v. King,* 146 N. C., 385; *Hocutt v. Telegraph Co.,* 147 N. C., 186; *Edwards v. Telegraph Co., ibid.,* 127; *Smith v. Telegraph Co.,* 167 N. C., 248. See, also, 13 Cyc., p. 71; *Wells v. Nat. L. Assn.,* 53 L. R. A., pp. 108, 109; *Lloyd v. Lloyd,* 60 Vt., 288; 8 A. and E. Enc. of Law,

605; 1 Sutherland on Damages, secs. 88, 89; 2 Joyce on Damages, sec. 1288. The rule is tersely stated in 8 A. and E. Enc. of Law, *supra:* "As it is the duty of a party injured by a breach of a contract, or a tort, to make reasonable effort to avoid damages therefrom, such damages as might by reasonable diligence on his part have been avoided are not to be regarded as the natural and probable result of the defendant's acts. There can be no recovery, therefore, for damages which might have been prevented by such reasonable efforts."

We do not think, though, that in this case defendant has properly shown what the answers of the witnesses to the question he propounded would have been. Their answers, if they had been given, might have been very disappointing and to such an extent as to be most unfavorable to the defendant, instead of helping out his defense. It has been often held that in such a case there will be no reversal, as we are unable to see that the proof would have been made if the question had been admitted, or that there was any prejudice to appellant by reason of the adverse ruling. *Wallace v. Barlow,* 165 N. C., 676; *Brinkley v. Railroad Co.,* 168 N. C., 428. There was no evidence that the plaintiff could have reduced the damages, or had a reasonable opportunity to do so, and the proof offered by the defendant did not tend, as we think, to show it, though we are left largely to mere conjecture as to what he could have proved, if anything, which the law regards as worthy of consideration by the jury; and it would also appear that plaintiff did the best he could under the circumstances. Unusual diligence was not required.

The charge of *Judge Daniels* was very fair to both parties and, as we view it, was entirely free from any fault. The verdict was not at all immoderate.

No error.