ALLEN, J., dissenting.
This case comes up upon a petition to rehear and reverse our former decision, reported in 169 N.C. 654. The action is brought to recover damages for trespass upon plaintiff's property, to wit, certain standing timber which plaintiff alleges the defendant wrongfully *Page 677 
and unlawfully prevented plaintiff from cutting and removing, in violation of the terms of a conveyance of said timber, executed by defendants to plaintiff. The issues are set out in the report of the case in 169 N.C.
The case was before us at Fall Term, 1913, and is reported in163 N.C. 387. We then construed the deed executed for the timber by defendants to plaintiff and held it to be an executed and not an executory
contract, and that it passed a present estate in the timber, defeasible as to all timber not cut by the grantee within the time limit fixed by the parties in the instrument. At the last trial only issues of damages were submitted and passed on, and the judgment of the Superior Court was affirmed.
On the trial defendants' counsel asked these questions, which were excluded, and defendants excepted, viz.:
"Will you state what the price of stumpage was of the character of the Scarboro timber in that neighborhood in the years 1909, 1910, and 1911?
"Do you know whether there was any stumpage in the neighborhood of the Scarboro timber in those years?
"Do you know how much there was to be had in that neighborhood?"
The counsel for defendants stated in open court that the purpose of these questions was to show that at the time of the alleged breach of contract by the defendants there was available in that community, in substantially the same situation and substantially of the same character, very much more timber for sale at a price not exceeding the price the plaintiff was to give this defendant.
In announcing his ruling the judge said that the evidence was (608) offered on the theory that plaintiff could have bought more timber and used it in place of that on the Scarboro land, and stated that he excluded the evidence for that purpose.
The court was asked to instruct the jury: "The measure of damages in this case is the difference between the contract price of the timber and its market value in the vicinity where it is located; and if the plaintiff could have obtained all the timber he wanted, in that vicinity or elsewhere, as good as the Scarboro timber and as easily accessible to Wyatt, the place of shipment, and at the same or less price, then he should have done so."
The court instructed the jury that the measure of damages for the conversion of the timber was the difference between the contract price and its market value in the vicinity where it is located, and refused the remainder of the prayer. The defendants excepted.
In the petition to rehear we are asked to reverse our opinion upon this assignment of error. After a further consideration, we are confirmed *Page 678 
in the opinion that the ruling of the court below was correct in rejecting the evidence for the purpose for which it was offered.
1. Assuming that such evidence in mitigation of damage is competent in a case like this, the offer to prove as well as the prayer for instruction is fatally deficient in one material particular. It is essential that the plaintiff should have had knowledge at the date of the breach of the contract that he could have obtained the same timber at the same or less price in substantially the same situation in that community. The defendants' offer to prove fails in this essential averment.
Evidence offered to establish a defense, operating to mitigate damages, must tend to prove all essential facts, or it is properly excluded. Knowledge by the party complaining of a breach of a contract that he could by reasonable diligence have prevented or lessened the damage caused by another's wrongful act is essential. Huntington Co. v. Parsons,62 W. Va. 26.
2. We do not think, however, that the rule of law invoked by defendant applies to this case. The gravamen of plaintiff's complaint is that he purchased from defendants the timber standing and growing upon certain lands at a certain contract price, which plaintiff agreed to pay and defendants agreed to receive; that the defendants conveyed the timber to him by deed and that he had five years within which to cut and remove it; that defendants wrongfully prevented plaintiff from cutting and removing the timber under the terms of the deed and converted same to their own use. The cause of action being established, the quantum of damage is alone to be adjusted.
We have long since held that standing timber, growing upon land, is a part of the realty and is governed by the laws applicable to that (609) kind of property. Hawkins v. Lumber Co., 139 N.C. 160. In consequence, this deed of defendants to plaintiff has been construed to vest in plaintiff an absolute estate in the timber, defeasible at the end of the term as to uncut timber. It follows, therefore, that when defendants entered during the term and deprived plaintiff of his property in the timber, it was practically a conversion to defendants' use. The rule of damage was, therefore, correctly stated by the court. It is the difference between the actual value of the timber and the contract price. Of course, if the price has been paid, it would be the value of the timber. There may be cases in which other incidental damages may be allowed.
There are many cases of breach of contract and of tort in which the rule contended for by the defendant applies. Illustrations are given in the opinion of Mr. Justice Walker in this case, 169 N.C. 657. But neither the diligence of the learned counsel for defendants nor our own *Page 679 
researches have been able to produce a case where such rule has ever been applied to actions like this.
The plaintiff owned the timber growing on the land. He had a property right in it, which he had the right to use and enjoy to the fullest extent, and defendants had no right to deprive him of it. And as is held by the Supreme Court of Georgia in Mfg. Co. v. Rucker, 80 Ga. 291: "Whenever the right to enjoy one's property to its fullest extent is invaded, and injury arises therefrom, he may recover any damages sustained by reason of such invasion; nor is he bound to do anything to avoid the consequences thereof." See, also, Price v. Shoals, 132 Ga. 250; Satterfield v. Rowan,83 Ga. 187.
In Reynolds v. Chandler Co., 43 Me. 513, it is held that when damage is caused by the flow of water from a dam, the owners are liable to the full amount of the injury, notwithstanding the injury might have been prevented by an expenditure less than the amount of damage.
The Court of Appeals of Texas, in Ry. Co. v. Borsky, 21 S.W. Rep., 1012, held that "though it is the duty of a party to protect himself from the injurious consequences of the wrongful act of another, if he can do so by ordinary effort and care, or at moderate expense, such rule has no application in a case for damages against a railroad for the destruction of plaintiff's crops by overflow from the defective construction of defendant's roadbed, where injury could only have been prevented by the digging of a ditch at a cost of $300."
When the defendants wrongfully deprived plaintiff of the right to cut and remove the timber they had conveyed to him, we do not think he was required to go around the community and inquire if there was other timber for sale, in an effort to replace that which had been wrongfully taken from him.
Plaintiff had a right to purchase other timber and to cut and sell it and make all possible profit on it; but had he done so it would not have relieved defendants from the consequences of their wrongful (610) act in respect to the timber he had purchased from them. Suppose plaintiff had bought A's timber and the timber of a dozen others in that community, and had cut and sold it, making a profit on it, that is no reason why the defendants should be permitted to take the timber plaintiff had purchased from them and wrongfully convert it to their own use and not pay for it. Plaintiff had the right to cut and sell that timber and make what profit on it he could, regardless of how many other tracts he could buy and sell at a profit.
If the rule of damages insisted upon by the defendant could apply to this case, a multiplicity of collateral issues would be raised which would completely obscure the original cause of action. The plaintiff would be required to prove: *Page 680 
1. Whether or not there was any stumpage for sale in the neighborhood of the timber in question at the time of the breach of the contract.
2. The quality and location of timber that might have been for sale in said neighborhood in comparison with the Scarboro timber.
3. That Wilson could have purchased the stumpage in question.
4. That Wilson could have purchased stumpage for sale, with the privilege of cutting it at any time within five (5) years, and on terms as set forth in the Scarboro deed.
5. That the parties, who were willing to sell, each had a good and indefeasible title to the land upon which the timber grew.
Upon each of these issues it would be competent for both parties to offer evidence pro and con.
The statement of the proposition and the issues that would be raised by its adoption conclusively demonstrates that it would be a dangerous innovation to hold that the vendor of timber can disregard the terms of his solemn deed, reap the profits himself, and then hold the vendee to strict accountability for not buying more timber. But even in respect to common carriers in dealing with goods which have been lost by their negligence, the courts will not apply this rule to the owner when he sues to recover the value of his property.
It is held in R. R. Co. v. Cobb, 64 Ill. 128, that "Where a person has bought and paid for an article, and suffers loss by reason of a default on the part of a carrier by whom it is shipped to get it to the point to which it is consigned, the carrier cannot claim that the injured party could have bought similar goods on the market at the point of consignment, in order to reduce the loss."
It is contended that the evidence rejected should have been admitted on another ground. The plaintiff was permitted to prove the value of standing timber similar to this in that community and the price at which lumber was selling in that market. This evidence was declared competent in the previous opinion of this Court. It was perfectly competent (611) for the defendant to rebut this evidence by showing that the value of the timber in the neighborhood and the price of lumber on the market was less than the testimony offered by the plaintiff tended to prove, and if the evidence had been offered for this purpose, we have no doubt it would have been admitted. But according to the statement of his Honor, the evidence was offered for the purpose of showing that the plaintiff could have bought more timber and used it in lieu of the Scarboro timber and made equally as much thereon, thereby lessening or entirely obviating any damage. His Honor states that the evidence was offered for that purpose and excluded, and we think properly so.
The petition to rehear is
Dismissed. *Page 681