Window World of Baton Rouge, LLC v. Window World, Inc.; Window World of St. Louis, Inc. v. Window World, Inc., 2019 NCBC 6.

STATE OF NORTH CAROLINA

WILKES COUNTY

WINDOW WORLD OF BATON ROUGE, LLC; WINDOW WORLD OF DALLAS, LLC; WINDOW WORLD OF TRI STATE AREA, LLC; and JAMES W. ROLAND,

    Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH,

    Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1

**ORDER AND OPINION ON WINDOW WORLD DEFENDANTS' MOTION FOR RECONSIDERATION**

WILKES COUNTY

15 CVS 2

WINDOW WORLD OF ST. LOUIS, INC.; WINDOW WORLD OF KANSAS CITY, INC.; WINDOW WORLD OF SPRINGFIELD/PEORIA, INC.; JAMES T. LOMAX III; JONATHAN GILLETTE; B&E INVESTORS, INC.; WINDOW WORLD OF NORTH ATLANTA, INC.; WINDOW WORLD OF CENTRAL ALABAMA, INC.; MICHAEL EDWARDS; MELISSA EDWARDS; WINDOW WORLD OF CENTRAL PA, LLC; ANGELL P. WESNERFORD; KENNETH R. FORD, JR.; WORLD OF WINDOWS OF DENVER, LLC; RICK D. ROSE; CHRISTINA M. ROSE; WINDOW WORLD OF ROCKFORD, INC.; WINDOW WORLD OF JOLIET, INC.; SCOTT A. WILLIAMSON; JENNIFER L. WILLIAMSON; BRIAN C. HOPKINS; WINDOW WORLD OF LEXINGTON, INC.; TOMMY R.

JONES; JEREMY T. SHUMATE; WINDOW WORLD OF PHOENIX LLC; JAMES BALLARD; and TONI BALLARD,

Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH, individually and as trustee of the Tammy E. Whitworth Revocable Trust,

Defendants.

1. **THIS MATTER** is before the Court upon Defendants Window World, Inc. ("Window World") and Window World International, LLC's (together with Window World, the "Window World Defendants") Motion for Reconsideration of Portions of September 26, 2018 Order and Opinion (the "Reconsideration Motion" or the "Motion") in the above-captioned cases.

2. Having considered the Reconsideration Motion, the briefs in support of and in opposition to the Motion, the arguments of counsel at the December 19, 2018 hearing, and other appropriate matters of record, the Court hereby **DENIES** the Motion.

> *Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Charles E. Coble, Robert J. King III, Benjamin R. Norman, Jeffrey E. Oleynik, and Andrew L. Rodenbough, and Keogh Cox & Wilson, Ltd., by Richard W. Wolff, John P. Wolff, III, and Virginia J. McLin, for Plaintiffs Window World of Baton Rouge, LLC, Window World of Dallas, LLC, Window World of Tri State Area LLC, James W. Roland, Window World of St. Louis, Inc., Window World of Kansas City, Inc., Window World of Springfield/Peoria, Inc., James T. Lomax III, Jonathan Gillette, B&E Investors, Inc., Window World of North Atlanta, Inc., Window World of Central Alabama, Inc., Michael Edwards, Melissa Edwards, Window*

*World of Central PA, LLC, Angell P. Wesnerford, Kenneth R. Ford, Jr., World of Windows of Denver, LLC, Rick D. Rose, Christina M. Rose, Window World of Rockford, Inc., Window World of Joliet, Inc., Scott A. Williamson, Jennifer L. Williamson, Brian C. Hopkins, Window World of Lexington, Inc., Tommy R. Jones, Jeremy T. Shumate, Window World of Phoenix LLC, James Ballard, and Toni Ballard.*

*Manning, Fulton & Skinner, P.A., by Michael T. Medford, Judson A. Welborn, Natalie M. Rice, and Jessica B. Vickers, and Laffey, Leitner & Goode LLC, by Mark M. Leitner, Joseph S. Goode, Jessica L. Farley, Sarah E. Thomas Pagels, and John W. Halpin, for Defendants Window World, Inc. and Window World International, LLC.*

*Bell, Davis & Pitt, P.A., by Andrew A. Freeman and Alan M. Ruley, for Defendant Tammy Whitworth.*

Bledsoe, Chief Judge.

I.

PROCEDURAL AND FACTUAL BACKGROUND

3.     The procedural and factual background of these matters is set out more fully in *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2018 NCBC LEXIS 218 (N.C. Super. Ct. Dec. 19, 2018), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2018 NCBC LEXIS 102 (N.C. Super. Ct. Sept. 28, 2018), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2018 NCBC LEXIS 100 (N.C. Super. Ct. Sept. 26, 2018), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60 (N.C. Super. Ct. July 12, 2017), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2016 NCBC LEXIS 82 (N.C. Super. Ct. Oct. 25, 2016), and *Window World of St. Louis, Inc. v. Window World, Inc.*, 2015 NCBC LEXIS 79 (N.C.

Super. Ct. Aug. 10, 2015). The Court recites here only those facts necessary for its determination of the Reconsideration Motion.

4. Window World is in the business of selling and installing windows, doors, and siding. It operates several store locations and also franchises its business around the country. Plaintiffs in these actions are various Window World franchisees and franchisee owners.

5. As one basis for their claims, Plaintiffs contend that Window World failed to meet its commitment to provide Plaintiffs access to the best available wholesale prices for certain products. Plaintiffs specifically allege that Window World misrepresented pricing information concerning window purchases from suppliers, including Associated Materials, Inc. ("AMI"), which served as Window World's exclusive supplier of windows after 2007. (Pls.' Third Am. Compl. ¶¶ 25, 72 [hereinafter "TAC"], ECF No. 252 (15 CVS 1), ECF No. 275 (15 CVS 2).)

6. According to Plaintiffs, Window World represented that Plaintiffs would receive "best pricing" from AMI and that there were only two tiers of dealer pricing— "A" pricing and the more favorable "B" pricing. (TAC ¶ 117.) Plaintiffs further allege that Window World hid the existence of even more favorable "C" pricing, which was only offered to certain Window World franchisees. (TAC ¶ 130.) Plaintiffs assert that Window World received "per-unit rebates," or kickbacks, "provided by the designated supplier," including AMI, "with respect to windows . . . and other products, as well as

certain options to windows . . . including 'LowE' screens, interior laminates, grids, and colors." (TAC ¶ 69.)

7.      Plaintiffs seek damages based on, among other things, the amounts they allegedly overpaid for windows, products, and services from vendors designated by Window World, including AMI (the "Overpayment Damages"). Plaintiffs do not seek damages based on lost profits, decreased sales, or diminution in the value of their businesses. (Pls.' Br. Opp. Defs.' Damages Mot. Compel 3, ECF No. 457 (15 CVS 1), ECF No. 497 (15 CVS 2).)

8.      On April 13, 2018, the Window World Defendants submitted a Business Court Rule ("BCR") 10.9 summary (the "BCR 10.9 Summary") to the Court. The BCR 10.9 Summary laid out the basis on which the Window World Defendants contended that Plaintiffs should be compelled to respond to various requests for production relating to Plaintiffs' alleged damages. By order dated April 20, 2018, the Court concluded that a proper resolution of the issues raised by the BCR 10.9 Summary required a more thorough process than that provided by BCR 10.9 and authorized the Window World Defendants to file a motion to compel, which they did on May 4, 2018 (the "Damages Motion to Compel"). (*See* Window World Defs.' Damages Mot. Compel, ECF No. 414 (15 CVS 1), ECF No. 454 (15 CVS 2).)

9.      Through the Damages Motion to Compel, the Window World Defendants sought responses to ninety-five separate requests for production of documents related to Plaintiffs' alleged damages. (*See* Lawton Aff. ¶¶ 16, 24, 26, 29, 32, 38, ECF No. 414.9 (15 CVS 1), ECF No. 454.9 (15 CVS 2).) Of particular relevance to the

Reconsideration Motion, the Window World Defendants sought to compel Plaintiffs to produce documents relating to the financial impact of the Window World Defendants' alleged overpricing on Plaintiffs' businesses, including information related to Plaintiffs' pricing, individual sales, cost of goods sold, and profitability. The central dispute concerned discovery of Plaintiffs' transaction-by-transaction customer records.

10. The Court held a hearing on the Damages Motion to Compel on May 24, 2018, at which the Court advised the parties that additional briefing was necessary to assist the Court's determination of the motion. The Court ordered supplemental briefing by order dated June 6, 2018, and thereafter held a second hearing on the Damages Motion to Compel on August 22, 2018 (the "August 22 Hearing"), at which all parties were represented by counsel.

11. In their briefing on the Damages Motion to Compel, the Window World Defendants argued that Plaintiffs' transaction-by-transaction customer sales records were needed to determine whether the amounts that Plaintiffs allegedly overpaid for goods from Window World-designated vendors impacted Plaintiffs' profitability. The Window World Defendants referenced "C" pricing only once in their three supporting briefs. (*See* Window World Defs.' First Br. Supp. Mot. Compel Damages Docs. 8, ECF No. 495 (15 CVS 1), ECF No. 534 (15 CVS 2) ("If the Plaintiffs avoided adverse economic consequences from alleged fraudulent overcharges – whether based on

allegedly undisclosed rebates or "C Pricing" – by raising prices to their customers, then the essential element of proximate cause is missing from the fraud claim.").)[1]

12. By an order and opinion dated September 26, 2018 (the "September 26 Opinion"), the Court denied the Window World Defendants' Damages Motion to Compel as to (i) documents relating to the financial impact of the alleged overpricing on Plaintiffs' businesses, including information related to Plaintiffs' pricing, individual sales, cost of goods sold, and profitability (the "Lost Profit Records") and (ii) Plaintiffs' transaction-by-transaction customer sales records, which the Window World Defendants argued would enable them to show that favorable "C" Pricing was available to Plaintiffs on specific transactions (the "'C' Pricing Records").[2] *See Window World of Baton Rouge, LLC*, 2018 NCBC LEXIS 100, at \*9, 35.

13. On October 10, 2018, the Window World Defendants filed the Reconsideration Motion, asking the Court to revisit its ruling in the September 26 Opinion as to both the Lost Profit Records and the "C" Pricing Records.

---

[1] The day before the August 22 Hearing and without seeking leave of court, the Window World Defendants filed six supplemental exhibits in support of their Damages Motion to Compel, all of which related to "C" pricing (the "'C' Pricing Exhibits"). (*See* Notice Filing Suppl. Exs. Supp. Window World Defs.' Damages Mot. Compel, ECF No. 572 (15 CVS 1), ECF No. 610 (15 CVS 2).) At the August 22 Hearing, and without objection from Plaintiffs, the Window World Defendants advanced arguments in favor of the Damages Motion to Compel based on the "C" Pricing Exhibits that were not addressed in their briefs.

[2] As noted in the September 26 Opinion, there was significant overlap between the "C" Pricing Records, the Lost Profit Records, and the other documents sought through the Damages Motion to Compel. *Window World of Baton Rouge, LLC*, 2018 NCBC LEXIS 100, at \*9 n.2. Thus, the Court defined "Lost Profit Records" to "include only documents related to Plaintiffs' pricing, product profitability, and, together with 'C' Pricing Records, Plaintiffs' individual transactions with Plaintiffs' customers." *Id.*

14.    The Court held a hearing on the Reconsideration Motion on December 19, 2018, at which all parties were represented by counsel.  The Reconsideration Motion has been fully briefed and heard and is now ripe for determination.

II.

LEGAL STANDARD

15.    Under Rule 54(b) of the North Carolina Rules of Civil Procedure, interlocutory orders are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."  N.C. R. Civ. P. 54(b).  "Although the North Carolina courts have not formulated a standard to guide trial courts in considering a motion to amend an interlocutory ruling under Rule 54(b), federal case law addressing similarly worded portions of Federal Rule 54(b) provides useful guidance."  *In re Se. Eye Center-Judgments*, 2017 NCBC LEXIS 77, at *9 (N.C. Super. Ct. Aug. 22, 2017).

16.    "[F]ederal courts adhere 'to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions.'"  *Id.* (quoting *Akeva, L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005)).  These grounds include "(1) the discovery of new evidence, (2) an intervening development or change in the controlling law, or (3) the need to correct a clear error or prevent manifest injustice."  *Wiley v. Buncombe County*, 846 F. Supp. 2d 480, 487 (W.D.N.C. 2012).  "Such problems rarely arise and the motion to reconsider should be equally rare."  *W4*

*Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 99, at *5 (N.C. Super. Ct. Oct. 19, 2017) (quoting *DirecTV, Inc. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004)).

17. "A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Id.* (quoting *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015)). Indeed, "[t]o allow motions to reconsider offhandedly or routinely would result in an unending motions practice." *Id.* (quoting *Wiseman v. First Citizens Bank & Tr. Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003)).[3]

## III.

## LEGAL ANALYSIS

18. The Window World Defendants contend that reconsideration of the portions of the September 26 Opinion pertaining to the Lost Profit Records and the "C" Pricing Records is appropriate based on "additional evidence" and is necessary to prevent manifest injustice. (Br. Supp. Window World Defs.' Mot. Recons. 3–4, ECF No. 620 (15 CVS 1), ECF No. 657 (15 CVS 2).) The Court disagrees.

### A. "C" Pricing Records

19. The Window World Defendants argue that reconsideration of the Court's ruling as to "C" Pricing Records is warranted because "additional evidence is available now showing" that a statement made by Plaintiffs' counsel at the August

---

[3] The Court notes that the Window World Defendants had ample opportunity to argue the merits of their position through their BCR 10.9 Submission, three briefs in support of the Damages Motion to Compel totaling a maximum of 10,500 words, the May 24, 2018 hearing on the Damages Motion to Compel, and the August 22 Hearing.

22 Hearing, which the Court relied upon in its September 26 Opinion, was incorrect. (Br. Supp. Window World Defs.' Mot. Recons. 3–4.)

20.   At the August 22 Hearing, the Window World Defendants indicated that the more favorable "C" pricing from AMI was only available for windows sold with Low-E glass, grids, and screens (the "'C' Pricing Options"). The Window World Defendants argued for the first time that Plaintiffs' transaction-by-transaction sales records with their customers (i.e., the "C" Pricing Records) should be produced to permit the Window World Defendants to determine the specific transactions in which the "C" Pricing Options were sold. According to the Window World Defendants, the "C" Pricing Records were needed "to know whether [Plaintiffs] sold options."[4] (Pls.' Br. Opp. Defs.' Mot. Recons. Ex. A [hereinafter "Aug. 22 Tr. I"], at 26:6–19, ECF No. 666.1 (15 CVS 1), ECF No. 703.1 (15 CVS 2).) Plaintiffs were not given the opportunity to respond to these arguments in their briefs nor to prepare for them prior to oral argument.

21.   In response to the Window World Defendants' new contentions at oral argument, Plaintiffs responded that the focus of the inquiry should not be on the transactions between Plaintiffs and their customers, but rather on the transactions between Plaintiffs and AMI. Through their Reconsideration Motion, the Window World Defendants take issue with the following exchange between Plaintiffs' counsel,

---

[4]   The Window World Defendants only referenced "options" once in briefing, and that reference appeared in the context of a lost profit argument. (*See* Window World Defs.' First Br. Supp. Mot. Compel Damages Docs. 8 ("Plaintiff Lomax testified that he was able to increase his margins with respect to options by raising prices on options.").)

Charles Coble, and the Court:

> MR. COBLE: Defendants' counsel is incorrect that -- that this calculation that he described is somehow not evident in the record. In fact, it is. We've secured from AMI a spreadsheet that has something like 200-and-some thousand rows that shows the number of windows and options that each Plaintiff made with each order to -- to AMI.
>
> So that we -- we have the information that would -- that would be used in the calculation that Mr. Leitner described; namely, how many -- how many for each Plaintiff, on how many instances did they purchase a window with a Low E option or with a grid option or later with a screens option; and what was the differential between how much they paid for that Low E option, that grids option, and that screens option; and what they would have paid had the Defendants delivered on the promises they made at the outset of the relationship.
>
> It is an arithmetic calculation. It's one that has a lot of data, but it's one that's -- can be -- can be performed based on the data that we already have; namely --
>
> THE COURT: Has that data been produced?
>
> MR. COBLE: Yes. From AMI to both parties. And we've – we've deposed AMI about it, and we're going to the -- a couple of the open items that Your Honor permitted us to complete after-the-fact deadline will be discovery of -- I'm sorry -- deposition of the accountant at AMI who prepared that very spreadsheet.
>
> So that -- that information not only doesn't -- the -- the argument that Mr. Leitner made not only doesn't justify ranging around in -- in -- in Plaintiffs' customer data, it doesn't even require any more discovery at all. It -- it requires only using the spreadsheet that we already have received from AMI.

(Wellborn Aff. Supp. Window World Defs.' Mot. Recons. Ex. A [hereinafter "Aug. 22

Tr. II"], at 29:18–30:24, ECF No. 621.1 (15 CVS 1), ECF No. 658.1 (15 CVS 2).) The

Window World Defendants did not challenge Plaintiffs' counsel's representation in

their rebuttal argument or otherwise address the issue prior to the Court's issuance of the September 26 Opinion.

22. In the September 26 Opinion, the Court based its conclusion as to the "C" Pricing Records, in part, on Plaintiffs' counsel's representation. The Court reasoned:

> [B]ased on the parties' representations at the August 22 Hearing, it appears that AMI has produced records, reflected in a spreadsheet that has also been produced (the "AMI Spreadsheet"), that show the number of windows and options that each Plaintiff purchased in each order placed with AMI, including whether Plaintiffs ordered the ["C" Pricing Options]. Accordingly, it appears to the Court that AMI has already produced the information that the Window World Defendants seek in the "C" Pricing Records.
>
> In addition, based on the claims and defenses in this action, the Court concludes that Plaintiffs' window sales with the ["C" Pricing Options] are irrelevant. Rather, the Court concludes that the relevant inquiry is whether Plaintiffs purchased windows from AMI with the ["C" Pricing Options], and, if so, on what occasions and in what quantities. In short, the relevant transactions here are those between Plaintiffs and dealers, such as AMI, and those between Plaintiffs and the Window World Defendants, not those between Plaintiffs and their customers.

*Window World of Baton Rouge, LLC*, 2018 NCBC LEXIS 100, at *23–24.

23. It is undisputed that the AMI Spreadsheet was in fact provided to the parties by AMI in March 2017 and thus prior to the August 22 Hearing.[5] The Window World Defendants contend, however, that, Mr. Coble's representations and the Court's conclusion were in error because, as of the August 22 Hearing, they still needed additional information from AMI to interpret the AMI Spreadsheet—in particular, an affidavit (or other explanatory information) that would allow the

---

[5] Because Plaintiffs were not made aware of the "C" pricing argument until the eve of the August 22 Hearing and after briefing had long closed, the Window World Defendants' suggestion that Plaintiffs should have referenced the AMI Spreadsheet in their own briefs is wholly without merit.

parties to interpret and apply the option codes in the AMI Spreadsheet and calculate how much Plaintiffs were charged and/or paid for options on windows. As a result, the Window World Defendants argue that the Court should reconsider its ruling on Plaintiffs' "C" pricing records and permit the requested discovery.

24. After the Reconsideration Motion was filed, however, on November 5, 2018, AMI submitted to the parties an affidavit (the "AMI Affidavit") confirming the option codes that were used in the AMI Spreadsheet.[6] (*See* Coble Aff. Ex. H, ECF No. 667.1 (15 CVS 1), ECF No. 704.1 (15 CVS 2).) Thus, to the extent the Window World Defendants were unable to fully interpret the AMI Spreadsheet as of the August 22 Hearing, the AMI Affidavit now enables them to do so. Therefore, the Court concludes that the Window World Defendants' Reconsideration Motion has been rendered moot to the extent it seeks reconsideration based on the Court's reliance on Plaintiffs' counsel's statements at the August 22 Hearing related to the AMI Spreadsheet.

25. In further support of the Reconsideration Motion, the Window World Defendants contend that Plaintiffs "should be ordered to produce their *own* records regarding the amounts that they *actually* paid AMI." (*See* Suppl. Window World Defs.' Br. Supp. Mot. Recons. 8, ECF No. 641 (15 CVS 1), ECF No. 678 (15 CVS 2) (emphasis in original).) Among the ninety-five separate requests for production at

---

[6] In addition to the AMI Affidavit confirming the option codes, AMI produced "spreadsheets that include invoice-level data on the number of windows, doors, and options Plaintiffs purchased and (for the first time) also the item-by-item purchase price for the window, door, and option Plaintiffs purchased." (Coble Aff. ¶ 16, ECF No. 667 (15 CVS 1), ECF No. 704 (15 CVS 2).)

issue in the Damages Motion to Compel were a handful of requests seeking documents related to Plaintiffs' transactions with vendors, including AMI. However, the Window World Defendants did not advance any arguments related to those requests in their three briefs on the Damages Motion to Compel or at the August 22 Hearing. Instead, the Window World Defendants chose to focus on Plaintiffs' transactions with their customers and raise this request for the first time on the Reconsideration Motion. It therefore appears to the Court that, through the Reconsideration Motion, the Window World Defendants "essentially attempt[] to present a better or more compelling argument in favor of [their] position, which courts routinely hold to be inadequate on a motion for reconsideration." *RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2016 U.S. Dist. LEXIS 74550, at \*5 (M.D.N.C. June 8, 2016) (internal quotation marks omitted). The Court concludes that the Window World Defendants' arguments seeking discovery of Plaintiffs' records of their actual payments to AMI are inadequate in the circumstances presented here.

26. Based on the foregoing, the Court concludes that reconsideration of the September 26 Opinion as it relates to the "C" Pricing Records is not necessary to prevent manifest injustice. *See Register v. Cameron & Barkley Co.*, 481 F. Supp. 2d 479, 480 n.1 (D.S.C. 2007) (defining manifest injustice as "an error by the court that is direct, obvious, and observable."). The Court further concludes that the Window World Defendants have failed to show that the September 26 Opinion, as it relates to these records, contains clear error, misapplies applicable law, or should be modified in light of the supplemental facts of record. Accordingly, the Court concludes, in the

exercise of its discretion, that the Reconsideration Motion should be denied as to the "C" Pricing Records.

B. Lost Profit Records

27. The Window World Defendants next ask the Court to reconsider its denial of the Damages Motion to Compel as to Plaintiffs' Lost Profit Records, arguing that the Court erred in concluding that "the alleged breach, by its very nature, occurred without Plaintiffs' knowledge" and that "discovery of Plaintiffs' efforts to mitigate is inapt on the record here." (Br. Supp. Window World Defs.' Mot. Recons. 4 (quoting *Window World of Baton Rouge, LLC*, 2018 NCBC LEXIS 100, at \*17–18).)

28. In denying the Damages Motion to Compel as to Plaintiffs' Lost Profit Records, the Court reasoned, in relevant part, as follows:

> Although only argued through passing reference in briefing and at the August 22 Hearing, the Window World Defendants also suggest that the Lost Profit Records are relevant to Plaintiffs' duty to mitigate. The Court disagrees. "The general rule is that where there has been a breach of contract, the injured party must do what fair and reasonable prudence requires to save himself and reduce the damage[.]" *Turner Halsey Co. v. Lawrence Knitting Mills, Inc.*, 38 N.C. App. 569, 572, 248 S.E.2d 342, 344 (1978) (internal quotation marks omitted). However, "[k]nowledge by the party complaining of a breach of a contract that he could by reasonable diligence have prevented or lessened the damage caused by another's wrongful act is essential." *Wilson v. Scarboro*, 171 N.C. 606, 608, 88 S.E. 872, 873 (1916). Here, the alleged breach, by its very nature, occurred without Plaintiffs' knowledge and thus without an opportunity for Plaintiffs to mitigate the purported breach's alleged effects. (*See* Pls.' Third Am. Compl., ¶ 249, ECF No. 252 (15 CVS 1), ECF No. 275 (15 CVS 2).) As such, Plaintiffs did not have a duty to mitigate, and thus discovery of Plaintiffs' efforts to mitigate is inapt on the record here.

*See, e.g, Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1085 (Cal. 2010) (excluding pass-on evidence as irrelevant to mitigation).

*Window World of Baton Rouge, LLC*, 2018 NCBC LEXIS 100, at *17–18.[7]

29.     The Window World Defendants now offer evidence tending to show that certain Plaintiffs were made aware of the existence of "C" pricing in May 2011 and contend that all Plaintiffs "knew the rebates paid to Window World were higher than $5 or $10 per window as of October 2011 when Window World provided its entire system of store owners with a copy of its Franchise Disclosure Document (the 'October 2011 FDD')[.]" (Br. Supp. Window World Defs.' Mot. Recons. 12.) The Window World Defendants argue that, "to the extent plaintiffs had knowledge that Window World was breaching its alleged promise to provide 'superior wholesale pricing' due to its extension of C Pricing . . ., they had an obligation to mitigate their damages allegedly attributable to this purported breach," presumably by increasing their prices to customers. (Br. Supp. Window World Defs.' Mot. Recons. 13.) As a result, the Window World Defendants contend that the Court should revisit its ruling concerning the Lost Profits Records and order their production. The Court disagrees.

30.     The Court acknowledges that its statement in the September 26 Opinion— "the alleged breach, by its very nature, occurred without Plaintiffs' knowledge"—was imprecise, if not inaccurate in light of the supplemented record. Nevertheless, even if the Court accepts as true the Window World Defendants' contention that Plaintiffs

---

[7] As the Court expressly noted in its September 26 Opinion, the issue of mitigation was "only argued through passing reference in briefing and at the August 22 Hearing[.]" *Window World of Baton Rouge, LLC*, 2018 NCBC LEXIS 100, at *17; (*see also* Window World Defs.' First Br. Supp. Mot. Compel Damages Docs. 8; Aug. 22 Tr. I, at 20:23–22:1).

were aware of the existence of "C" pricing no later than October 2011, the Window World Defendants' motion as to these records still must fail. For the reasons discussed at length in the September 26 Opinion, the Court concluded that "whether Plaintiffs passed the alleged overcharged amounts to their customers has no bearing on whether Plaintiffs were harmed by the Window World Defendants' conduct or the recoverable damages for such harm" on Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing. *Window World of Baton Rouge, LLC*, 2018 NCBC LEXIS 100, at *11–18. This reasoning applies with equal force in the context of mitigation. *See Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1085 (2010) (holding pass-through evidence is no more relevant to the issue of mitigation than it is to proving damages) (citing *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481, 491–94 (1968))).

31. Therefore, the Court concludes that reconsideration of the September 26 Opinion as it relates to the Lost Profit Records is not necessary to prevent manifest injustice, and further that the Window World Defendants have failed to show that the September 26 Opinion, as it relates to these records, contains clear error, misapplies applicable law, or should be modified in light of the supplemental facts of record. Accordingly, the Court concludes, in the exercise of its discretion, that the Reconsideration Motion should be denied as to the Lost Profits Records.[8]

---

[8] The Window World Defendants appear to advance certain other arguments in support of their Reconsideration Motion that are not specifically addressed above. The Court has considered each of these other possible arguments and finds them without merit.

## IV.

## CONCLUSION

32. **WHEREFORE**, the Court, for the reasons stated herein and in the exercise of its discretion, hereby **DENIES** the Window World Defendants' Reconsideration Motion.

**SO ORDERED**, this the 25th day of January, 2019.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge